DAMON SEPE ET AL. *v.* JOHN R. DEEMY, JR., ET AL.
(4214)

HULL, BORDEN and DALY, Js.

Argued November 12, 1986—decision released January 27, 1987

*John F. Fallon,* for the appellants (plaintiffs).
*Dion W. Moore,* for the appellees (defendants).

HULL, J. The plaintiffs, Damon Sepe and his father, George Sepe, appeal from the denial of a motion to set aside the judgment on a jury verdict in a negligence action. The judgment awarded Damon Sepe $10,000 in damages for his injuries and losses. The jury found in favor of George Sepe on his claim for hospital and medical expenses incurred on behalf of his minor son, Damon Sepe, but awarded no money damages. The

plaintiffs' motion to set aside the verdict was denied without a memorandum of decision. Because neither party moved the court to articulate its decision, this court is denied the benefit of the insight and evaluations of the frontline observer of the trial. The plaintiffs claim that the court erred (1) in denying the motion to set aside the verdict in favor of Damon Sepe on the ground of inadequacy, and (2) in denying the motion to set aside the verdict on George Sepe's claim on the ground that the jury erroneously awarded him no damages for medical or hospital expenses despite the collateral source rule instruction given by the court. We conclude (1) that although the $10,000 jury verdict in favor of Damon Sepe was parsimonious, it was not inadequate as a matter of law, and (2) that the court erred in not setting aside the verdict in favor of George Sepe in light of the collateral source rule and certain undisputed medical bills.

The facts are not in dispute. On June 13, 1981, Damon Sepe, age sixteen, was a passenger in a car driven by the defendant, Robert J. Deemy, and owned by the named defendant, John R. Deemy, Jr. Damon was injured when Robert J. Deemy negligently drove the car off the highway and into a telephone pole. Damon was taken to St. Vincent's Medical Center in Bridgeport where he remained one week. Concerning the extent of Damon's injuries, we have meticulously examined the transcript and medical records in order to do justice in a case in which, at first blush, the verdict may appear legally inadequate. Damon sustained injuries to his face and head. He had moderate pain in the area of his nose and right eye. He complained of double vision. He was diagnosed in the hospital as having the following major injuries: a fractured nose; a fracture of the skull in the frontal area; a fracture of the lower orbital rim of the right eye; and the loss of taste and smell.

Two or three weeks after the accident, Damon went to work in a physically demanding job for his uncle. At that time, he was not feeling any physical pain. He was still bothered, however, by his right eye being a little lower than the other, a problem with his sinus, and a scar below his right eye. He was unable to play football at high school that fall. Otherwise, his complaints of alteration of life's activities were minimal. He worked at Howland's department store nights and weekends during that school year. This became a full-time job the next two summers. He continued to be an average student at Trumbull High School and graduated on schedule. At the time of the trial in June, 1984, he had just completed his first year at Central Connecticut State College.

A review of the expert medical testimony reveals that in late 1981 Damon was diagnosed as having orbital cellulitis resulting in a sinus infection attributable to a fracture of the orbital rim of the right eye. His right eye was found to be lower than the left, and he had double vision in the right eye. Damon also underwent corrective surgery later in 1981. The procedure involved inserting a small piece of plastic at the place of the orbital fracture. The surgery was reported to have been successful, and Damon had no further complaints of any kind, including double vision. His nasal deformity continued, however, and in 1982 Damon underwent surgery to repair that deformity which had been caused by the break to his nose. Damon had minor discomfort for a short time after each of the two operative procedures.

Damon underwent taste and smell testing in May, 1983, at the Taste and Smell Diagnostic Clinic at the University of Connecticut Health Center in Farmington. The diagnosis was that Damon's "ability to taste is severely diminished, and that he had no ability to smell." There was testimony at trial that if the taste and

smell function is not regained within six months after traumatic head injury, those functions will not be regained. This testimony, however, was not uncontradicted. The plaintiff George Sepe claimed that as a result of the accident he incurred medical and hospital bills on behalf of Damon in the total sum of $11,298.01. No evidence of Damon's life expectancy was offered.

I

MOTION TO SET ASIDE VERDICT AS TO DAMON SEPE

The legal tests we apply when asked to set aside a verdict are clearly enunciated in *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). "There are serious constitutional issues posed by setting aside a jury verdict. This is so because ' "[l]itigants have a constitutional right to have issues of fact decided by the jury." *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 169, 169 A.2d 265 (1961). "The right to a jury trial is fundamental in our judicial system, and . . . the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970); *Jacobs* v. *Goodspeed,* 180 Conn. 415, 429 A.2d 915 (1980); *Gosselin* v. *Perry,* 166 Conn. 152, 168, 348 A.2d 623 (1974).' *Barbieri* v. *Taylor,* 37 Conn. Sup. 1, 2, 426 A.2d 314 (1980). Accordingly, a court should move cautiously in deciding to set aside a jury's verdict.

"A court should be especially hesitant to set aside a jury's award of damages. . . . 'The trial court's refusal to set aside [a] jury verdict is entitled to great weight and every reasonable presumption should be given in

favor of its correctness.' *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981); *Waldron* v. *Raccio,* 166 Conn. 608, 618, 353 A.2d 770 (1974). This is so because '[f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than [an appellate court] can, on the printed record, what factors, if any, could have improperly influenced the jury.' *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972). Our function on appeal is, accordingly, limited to determining whether the trial court abused its discretion in denying the plaintiffs' motion to set aside the verdict. Such a decision 'can be disturbed only by considerations of the most persuasive character, as where the verdict shocks the sense of justice or the mind is convinced that it is in fact entirely disproportionate to the injury. [Maltbie,] Conn. App. Proc., p. 151.' *Mulcahy* v. *Larson,* 130 Conn. 112, 114, 32 A.2d 161 (1943). The standard of review for an appellate court in a case like this was first stated in *Briggs* v. *Becker,* 101 Conn. 62, 66–67, 124 A. 826 (1924): '[T]he only practical test is whether the total damages awarded fall somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption.' It is important to note that *Briggs* and the cases that have followed do not require a direct showing of partiality, prejudice, mistake or corruption, but rather stand for the proposition that if the amount awarded 'shocks the sense of justice' as to what is reasonable, then the inferred conclusion is that the jury was misguided in reaching its decision. See generally *Raia* v. *Topehius,* 165 Conn. 231, 239, 332 A.2d 93 (1973); *Hook* v. *Dubuque,* 153 Conn. 113, 115, 214 A.2d

376 (1965)." *Zarrelli* v. *Barnum Festival Society, Inc.,* supra, 326–28.[1]

The application of a clear-cut rule to a given set of facts is an exacting exercise in judicial judgment. This is especially so when an appellate court is required to rule on the trial court's refusal to set aside, as excessive or inadequate, a jury verdict in a personal injury action. We first turn to the facts in this case, viewed in the light most favorable to sustaining the verdict; *Herb* v. *Kerr,* 190 Conn. 136, 459 A.2d 521 (1983); concerning Damon's claimed injuries other than the loss of the senses of taste and smell. One overpowering factor leaps full-blown from the sterile pages of the record. Damon's claim of inadequacy of the $10,000 verdict is based on what *might* have occurred to him as a result of the injuries he received. His injuries, including a skull fracture, fractures of the nose and of the orbital rim of the right eye, were considered very serious when he was first admitted to St. Vincent's Medical Center. He was treated and monitored by a neurosurgeon, and placed in the intensive care unit. He was released, however, in a week. Several weeks later, the attending surgeon found no further neurological symptoms. Of paramount importance is the fact that two or three weeks after the accident, he went to work in a physically demanding job, painting a house. As previously noted in detail, neither his work experience, school progress, nor general activities were thereafter adversely affected in any meaningful way.

Between Damon's release from his initial hospitalization in June, 1981, and his hospitalization for surgery

---

[1] In this case, as in *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 328 , 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986), there is no claim that there was any misconduct on the jury's part. The plaintiff also does not claim that there might have been "spill-over" from the jury's knowledge, discussed later in this opinion, that all claimed medical expenses were paid by George Sepe's insurance carriers.

on his right eye in November, 1981, he complained of double vision, a lower right eye, and some problems in the sinus area. The lower right eye and double vision were completely corrected in the second hospital visit, which lasted only four days. He had minimal discomfort and pain. There remained only further work on his nose, which was satisfactorily done in the April, 1982 hospitalization. The claimed scar below his right eye is not discernible in the photographs of Damon in the record.

Concerning the loss of senses of taste and smell, we have described Damon's complaints and the testimony regarding them. We have stressed the subjective nature of such testing. The jury was not required to believe Damon's expert. *Nielson* v. *D'Angelo,* 1 Conn. App. 239, 247, 471 A.2d 965 (1984). "The extent to which the jury accepted the medical testimony is, of course, unknown. The jury were not bound by the opinion of the [doctor] . . . ." *Birgel* v. *Heintz,* supra, 30.

Finally, no substantial claim was presented to the jury for permanent injuries other than the loss of senses of taste and smell. As we have noted, those were subjectively manifested and the jury could well have disbelieved them. Damon substantially recovered from all of his other injuries. The only permanent alteration in Damon's physical condition is a piece of plastic replacing the shattered lower orbital rim of his right eye. The jury could have found this to be neither noticeable nor the source of any adverse symptoms.

We go back to bedrock. " 'In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence

in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial.' " *Birgel* v. *Heintz,* supra, 27. "A mere doubt of the adequacy of the verdict is an insufficient basis for such action. *Hauk* v. *Zimmerman,* [135 Conn. 259, 260, 63 A.2d 146 (1948)]; *Mulcahy* v. *Larson,* [130 Conn. 112, 114, 32 A.2d 161 (1943)]. A conclusion that the jury exercised merely poor judgment is likewise insufficient." Id., 28. "At most the jury exercised poor judgment." *Fox* v. *Mason,* 189 Conn. 484, 490, 456 A.2d 1196 (1983). "Viewing the evidence in the case at bar, it is clear that the jury were afforded a considerable range within which they could properly arrive at a conclusion. Although there was evidence presented which might support a larger award, a less sizable award, such as that found by the jury, could also be supported by the evidence. It is not our function to pick out or select the evidence most favorable to the plaintiff and on the basis of that evidence determine whether the trial court abused its discretion in refusing to set aside the verdict as inadequate." *Birgel* v. *Heintz,* supra, 29.

The court did not err in refusing to set aside the jury's verdict of $10,000 in favor of the plaintiff Damon Sepe.

## II

### MOTION TO SET ASIDE VERDICT AS TO GEORGE SEPE

The plaintiff George Sepe claimed recovery of $11,298.01 in medical and hospital bills incurred on behalf of his son, Damon. The jury found in his favor

but awarded no damages. George Sepe appeals from the court's judgment denying his motion to set aside this verdict.

On direct examination, George Sepe's counsel asked him if he had received bills for medical and hospital treatment provided to his son Damon. He replied that he had and that those bills were processed through his various insurance coverages. George responded to defense counsel's question on voir dire that all of the packet of bills totalling $11,248.01 were paid by this insurance carrier. The court gave the jury a proper charge on the collateral source rule.[2] See *Gorham* v. *Farmington Motor Inn, Inc.,* 159 Conn. 576, 579–80, 271 A.2d 94 (1970); *Roth* v. *Chatlos,* 97 Conn. 282, 287–89, 116 A. 332 (1922); *Todd* v. *Malafronte,* 3 Conn. App. 16, 23, 484 A.2d 463 (1984).

The defendants argue in their brief that the jury could conclude that the medical bills claimed were not reasonably related to necessary and proper treatment of Damon Sepe. Defense counsel admitted, however, with commendable candor at oral argument in this court that if the jury followed the charge on the collateral source

---

[2] The court charged as follows: "However, I do want to explain to you that Mr. Sepe, George Sepe, as the father—[Damon Sepe] was a minor at the time this action was brought—claims that he has incurred certain medical expenses on behalf of his son. And before I get into those I do want to tell you that in Connecticut we have a rule called the collateral source rule. The fact that Mr. Sepe testified that most of those bills were paid by insurance has no bearing in terms of this case. The theory of our law is if some third party should pay all or part of the damages, that is not to benefit a wrongdoer. If you should so find that Mr. Deemy was a wrongdoer and that he was in fact negligent and that his negligence caused these injuries. So the basic rationale of the law is that he can't get the benefit of some third party's payment. So you're not to consider the fact that there has been an insurance payment according to Mr. Sepe's testimony. . . . [I]f you find that Mr. Deemy was negligent and if you find that negligence was the proximate cause of the injuries, then the plaintiff, George Sepe, is entitled to recover medical expenses and if you find these to have been alleged and proven by a fair preponderance of the evidence, you must also find that—you can also only award those amounts which are reasonable."

rule it would have had to award at least approximately $2000 in damages. There was sufficient medical testimony in the record from which the jury, if it correctly followed the collateral source rule, could award the plaintiff, George Sepe, all or any part of the claimed medical bills.

The defendants point out that the purpose of the collateral source rule, as enunciated in *Gorham* v. *Farmington Motor Inn, Inc.,* supra, was to prevent the *defense* from bringing out, before the jury, that the plaintiff's medical bills had been paid in whole or in part by a third party. In other words, they claim that this rule was designed to benefit the plaintiff. They claim, therefore, that the plaintiff invited the error by offering such testimony. We do not reach this issue, however. The court charged on the collateral source rule, without exception by the defendants. The question that we consider, therefore, is whether the jury could reasonably have found for the defendants on George Sepe's claim if it properly followed this charge. We conclude that on the evidence and the charge on the collateral source rule, the jury's failure to award any damages to the plaintiff George Sepe compels the conclusion that the jury was influenced by partiality, prejudice or mistake. *Wochek* v. *Foley,* 193 Conn. 582, 586, 477 A.2d 1015 (1984). The court erred in not setting aside the verdict awarding no damages to George Sepe.[3]

There is no error in the judgment in favor of the plaintiff Damon Sepe on the first count. There is error in the judgment on the second count concerning George Sepe, the judgment is set aside as to that count and the case is remanded for a new trial on count two.

In this opinion the other judges concurred.

---

[3] A more expeditious course of action would have been to return the verdict to the jury with clarifying instructions for further consideration of its failure to award damages.