MARGARET MALMBERG, ADMINISTRATRIX (ESTATE OF SCOTT C. MALMBERG) *v.* ANN MARIE LOPEZ (13276)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and SANTANIELLO, Js.

Argued May 6—decision released August 23, 1988

*Paul E. Pollock,* for the appellant (defendant).

*John D. Jessep,* for the appellee (plaintiff).

SANTANIELLO, J. The plaintiff[1] brought this action seeking damages for the wrongful death of Scott C. Malmberg. The case was tried to a jury which returned a verdict for the plaintiff, but awarded zero damages. The plaintiff filed a motion to set aside the verdict, claiming that the award was contrary to the law and the evidence, and requested a new trial on the issue of damages only. The trial court denied the motion, and the plaintiff appealed.

The Appellate Court, in a split decision, found error in the court's denial of the motion to set aside the verdict and remanded the case for a hearing in damages only. *Malmberg* v. *Lopez,* 12 Conn. App. 438, 531 A.2d 161 (1987). From that ruling, the defendant filed a petition for certification to appeal which this court granted.

The facts as reported in the Appellate Court decision are as follows: "On the evening of May 15, 1982, Scott Malmberg, and his date, Ann Marie Lopez,

---

[1] The original plaintiff in this action was Margaret Malmberg, the former administratrix to the estate of Scott C. Malmberg. Subsequent to Margaret Malmberg's death, the Appellate Court granted a motion to substitute Frederick Malmberg, the current administrator of the decedent's estate, as the plaintiff.

attended a social gathering at the home of Dwight Kettlehut in Cheshire. Malmberg had driven Lopez and Doreen Mosesian to the party after picking them up at Mosesian's home in West Hartford. They arrived at the party at about 10 p.m. At the party, beer, fruit juice and vodka punch were available for consumption.

"The party broke up at about 12:30 a.m. Thereafter, with the defendant, Kettlehut and Mosesian as passengers, Malmberg began driving [his car] toward West Hartford, via I-84, to take Mosesian and Lopez to Mosesian's house where both women were to spend the night. The trip began with Malmberg in the driver's seat, Lopez in the front passenger seat, Kettlehut in the center of the back seat, and Mosesian to his left. At some point on I-84, Malmberg, complaining of a pain in his shoulder, asked the defendant if she would drive. Upon her assent, [Malmberg] pulled to the side of the road and [he] changed places [with Lopez]. With the defendant driving, they proceeded on toward West Hartford.

"At a point near exit 39 on eastbound I-84, the defendant was proceeding in the left hand lane approaching an exit ramp situated on the left. The car then went off the highway to the left and struck a light pole and a guard rail and rolled down an embankment. Kettlehut and Mosesian were not injured and crawled out of the vehicle through the rear window. Kettlehut observed that Malmberg and the defendant were not in the car. Kettlehut called for Malmberg and then went up the embankment to the highway, where he saw a silhouette on the road that proved to be Malmberg. Kettlehut then flagged down a passing car from which one person got out and another continued on to seek help. Kettlehut then discovered the defendant on the embankment. Shortly thereafter, the police and an ambulance arrived on the scene. Malmberg later died because of fractured cervical vertebrae.

"During the trial, Kettlehut testified substantially as stated above. The defendant testified that she had planned to spend the night at Mosesian's house located on Farmington Avenue in West Hartford and that the accident happened in the area of the exit for the town of Farmington. She stated that she was unfamiliar with that portion of the highway near the exit. The defendant could remember nothing else about the accident at the trial. The plaintiff, however, introduced into evidence an accident report filed by the defendant one month after the accident. In this report, the defendant admitted that she was the operator of the vehicle at the time of the accident and that while so engaged she was involved in an accident in Farmington on I-84 near exit 39 eastbound. In describing what happened, the defendant stated in the report that 'Vehicle #1 [Malmberg's car] went off I-84 and hit a light pole and guardrail and rolled down the embankment.' She also stated in the report that one person had been killed in the accident. The plaintiff also introduced into evidence a certified copy of Malmberg's death certificate, which stated that on May 16, 1982, at 1:30 a.m. in the town of Farmington, Scott Malmberg was a passenger in an auto that left the road at a highway exit ramp at exit 39 of I-84 eastbound and that he died in an accident of fractured cervical vertebrae." *Malmberg* v. *Lopez,* supra, 439–40.

The defendant appeals claiming that the Appellate Court erred in: (1) concluding that the evidence required that the jury find that the defendant's negligence was the proximate cause of the victim's death;[2] and

---

[2] This court does not interpret the Appellate Court opinion as having concluded that the jury was required to find the issue of proximate cause in favor of the plaintiff. In its discussion of this issue, the Appellate Court declared that "it is still *probable* that the defendant's negligence would have been a substantial factor and thus a proximate cause of the decedent's death." (Emphasis added.) *Malmberg* v. *Lopez,* 12 Conn. App. 438, 446, 531 A.2d 161 (1987). Accordingly, we do not address this first claim of the defendant.

(2) remanding the case for further proceedings only upon the issue of damages, allowing the jury's determination of liability in favor of the plaintiff to remain undisturbed. We reverse.

The question before this court is whether the Appellate Court erred in its attempt to interpret the jury's verdict. The Appellate Court, in its review of the trial court's refusal to set aside the verdict, concluded that the evidence supported the jury's finding of liability, but that the award of zero damages in a wrongful death action was inadequate as a matter of law. Id., 443. In contrast to the trial court's apparent analysis of the verdict as an improperly expressed defendant's verdict,[3] the Appellate Court found that the damage award "appeared to have been motivated by sympathy for the defendant." Id., 447.

" 'On appeal, the conclusion of the trial court from the vantage point of the trial bench cannot be disturbed unless there is a clear abuse of discretion.' " *Riccio* v. *Abate,* 176 Conn. 415, 417, 407 A.2d 1005 (1979). An appellate court cannot retry the facts of a case or pass upon the credibility of the witnesses. Id., 418. The trial court's refusal to set aside a verdict is entitled to great weight and every reasonable presumption should be given in favor of its correctness. Id., 417. " 'If, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . .' " *Frankovitch* v. *Burton,* 185 Conn. 14, 15, 440 A.2d 254 (1981). " 'However, it is the court's duty to set aside the verdict when it finds that "it does manifest injus-

---

[3] The trial court, in denying the motion to set aside the verdict, reasoned that the jury failed to find that the accident was the proximate cause of the decedent's death. The trial court found that "[t]here was no evidence as to the manner in which [the] decedent exited from vehicle," and hypothesized that "[i]t was entirely possible the decedent exited from the vehicle, returned to the highway and was thereafter struck by a motor vehicle."

tice, and is . . . palpably against the evidence. . . ." *State* v. *Chin Lung,* 106 Conn. 701, 704, 139 A. 91 (1927).' " *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 327, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). In determining whether a verdict does such injustice, "the only practical test is whether the total damages awarded fall somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." *Briggs* v. *Becker,* 101 Conn. 62, 66–67, 124 A. 826 (1924); *Sepe* v. *Deemy,* 9 Conn. App. 524, 528, 520 A.2d 237 (1987). A direct showing of partiality, prejudice, mistake or corruption is not required. " '[I]f the amount awarded "shocks the sense of justice" as to what is reasonable, then the inferred conclusion is that the jury was misguided in reaching its decision. . . .' " *Sepe* v. *Deemy,* supra, 528–29.

The crucial finding of the trial court was its statement that "[i]t was quite evident that the jury concluded [that] the plaintiff failed to sustain her burden of proof with respect to the injury mechanism and causal relationship between the defendant's negligence and the passenger's death." This finding was rejected by the Appellate Court when it concluded that the jury's verdict for the plaintiff should be upheld, but that a new hearing was required with regard to the plaintiff's claim for damages which was so low as to shock the sense of justice. In our view, however, neither the Appellate Court nor this court is in a position clearly to ascertain from the conflicting jury verdict how the members of the jury found on the underlying issue of liability. The Appellate Court therefore lacked the authority to substitute its finding on liability for that of the trial court.

Our view that the Appellate Court should have recognized the inherent ambiguity in the jury's verdict has implications for whether that court erred in limiting the further proceedings on remand to the issue of damages only. We have held that where the plaintiffs are entitled to recover damages for their injuries, an award limited to nominal or special damages is "manifestly inadequate" and should be set aside, "for the same rule governs upon an application for a new trial in the case of an inadequate award as in the case of an excessive award." *Johnson* v. *Franklin,* 112 Conn. 228, 229, 152 A. 64 (1930). In *Johnson,* this court distinguished between the case where the damages awarded are inadequate and the verdict was properly for the prevailing party and the case "[w]here the damages awarded are nominal and the verdict should have been *against* the prevailing party . . . ." (Emphasis added.) Id., 230. In the former case the verdict should be set aside and a new trial ordered; in the latter, the verdict should stand. Id. An explicitly stated award of *zero* damages differs from an award of nominal damages.[4] A plaintiff's verdict with a nominal damage award ordinarily

---

[4] The Appellate Court has addressed the question of whether a plaintiff's award of zero damages should be treated as an inadequate verdict, requiring a new trial, or as an improperly expressed defendant's verdict, requiring no further action. *Sepe* v. *Deemy,* 9 Conn. App. 524, 520 A.2d 237 (1987). A "jury's failure to award any damages to the plaintiff [after the jury rendered a verdict in his favor] . . . compels the conclusion that the jury was influenced by partiality, prejudice or mistake." Id., 533. The Appellate Court found that the trial court erred in refusing to set aside the verdict and remanded the case for a new trial. Id.

Similarly the District of Columbia Circuit Court has held where "the verdict is inconsistent with stipulated evidence as to out-of-pocket loss, and where the jury arbitrarily abdicated its responsibility to assess damages for one of the plaintiffs, the interests of justice require a new trial." *Lester* v. *Dunn,* 475 F.2d 983, 987 (D.C. Cir. 1973). There, the court reasoned that "[s]ince the irrationality of the jury's award here is such that even speculation as to why it acted as it did is unrewarding, the proper course is to have a new trial on all issues, rather than one limited to the question of damages." Id.

suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. See, e.g., *Riccio* v. *Abate,* supra, 418–19; *Covey* v. *Willson,* 4 Conn. App. 233, 239, 493 A.2d 290 (1985). The jury's intent in rendering a plaintiff's verdict with zero damages in a wrongful death action is far less clear.

Faced with the problem of an apparently conflicting verdict in an action for property damage and injuries sustained in an automobile accident, the Supreme Court of Appeals of West Virginia reasoned: "[W]here liability is strongly contested and the award of damages is clearly inadequate if liability were proven . . . an appellate court cannot infer from the jury verdict alone whether the jury were confused about the proper measure of damages or whether they were confused about the proper rules for determining liability, or both." *Freshwater* v. *Booth,* 233 S.E.2d 312, 315 (W. Va. 1977). That court held further that "[w]here . . . liability is contested and an appellate court is unable to infer whether upon a new trial a jury would find in favor of the defendant or in favor of the plaintiff an appellate court must remand the case for a trial on all issues." Id., 316.

We therefore concur in the opinion expressed by the dissenting judge of the Appellate Court who stated that "if there must be further proceedings, it is surely arguable that the finding of zero damages is reflective of some misunderstanding on the issue of liability. Such a likelihood . . . transcends any public policy considerations concerning finality and judicial economy." *Malmberg* v. *Lopez,* supra, 449 (*Covello, J.,* dissenting). "[A]ssumptions which are based upon conjectures as to the real basis of the verdict and the method used by the jury in computing [damages]" must be "supported by the claims of proof." *Rosenblatt* v. *Berman,* 143 Conn. 31, 37, 119 A.2d 118 (1955). Such assumptions, although made by "[t]he court, with a commend-

able desire to avoid the necessity for a new trial," are simply attempts "to rationalize the jury's decision" and should be made "only when it is manifest" that the jury has rendered an award which is "contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions." Id.

Here, the jury's intent in finding the issues for the plaintiff, but awarding zero damages, is known only to the jurors, and this court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation. Such ambiguity requires a rehearing in full, on both liability and damages.[5]

Accordingly, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction that the case be remanded to the trial court for a new trial.

In this opinion the other justices concurred.

---

[5] The trial court had an opportunity to direct the jury to reconsider its confusing verdict in accordance with Practice Book § 311, which provides:
"JURY RETURNED FOR RECONSIDERATION

"The court may, if it determines that the jury have mistaken the evidence in the cause and have brought in a verdict contrary to it, or have brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for like reason may return them to a third consideration, and no more."