[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO SET ASIDE VERDICT AND DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
The above captioned case was tried to a verdict. The jury answered certain special interrogatories submitted by the court and rendered a verdict for the plaintiff in the amount of $80,000.00 against the defendant.
This case arose out of an agreement between the plaintiff and the defendant in which the plaintiff agreed to provide certain typographical and printing work for the defendant's book on coin grading, and the defendant agreed to pay the agreed price by certain barter arrangements which included transfer of certain barter exchange credits and coins to the plaintiff.
The defendant has now moved to set aside the verdict and for judgment notwithstanding the verdict.
 I.
There are no grounds to set aside the jury's verdict as to the first count.
The gist of the first count of the complaint is that the defendant agreed to make part of the payment for the plaintiff's printing and graphic services by the transfer of some $9,000.00 in credits from a now defunct Stamford barter exchange. There was sample evidence from which the jury could have determined as it did that the defendant never made the transfers of the $9,000.00 in barter credits to the plaintiff because when the plaintiff attempted to use the credits, he was advised that the defendant had less than $9,000.00 in credits on hand.
In its answer to special interrogatories, the jury found specifically that the defendant Alan Hager failed to transfer certain barter credits in the amount of $9,000.00 to the plaintiff pursuant to the terms of their agreement dated October 16, 1984. In response to another interrogatory, the jury specifically found that Hager had not then subsequently offered to transfer $8,000.00 in barter credits to the plaintiff in lieu of the $9,000.00 in such credits specified in the contracts.
Since Hager had agreed to make part of the printing job payment by using $9,000.00 barter credits, and there was evidence to warrant a finding that he did not do so and thereby CT Page 5855 breached the contractual agreement between the parties, the verdict will not be set aside as to Count 1.
 II.
The defendant claimed a mistrial because the plaintiff's counsel made remarks about the defendant's dismissal from a numismatic association in his opening statement to the jury, which the defendant claims were improper.[1]
The court denied this motion. The defendant now says that denial warrants setting aside the verdict. The court does not agree. While one might argue in the abstract whether opening statements should be permitted at all, our Rules of Practice settled the issue in 1978 by permitting counsel in a jury case to make a brief opening statement and to apprise the jury in general terms as to the nature of the case. See Conn. Practice Book 296.
If there are to be opening statements counsel must be extended some reasonable latitude to tell the jury what they intend to prove before they have proved anything. After reviewing the Supreme Court's holding upholding the limited admissibility of other prior misconduct in the case of Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 191 (1986) and receiving a representation from the plaintiff that he would offer evidence about prior complaints against the defendant Hager, the court denied the motion and let the trial continue. Furthermore, although the plaintiff offered no evidence in the plaintiff's case about this, the defendant's counsel himself questioned the defendant about his dismissal from the American Numismatic Association and the very matters of prior complaints regarding his conduct as a coin dealer. This resulted in extensive cross examination by plaintiff's counsel. The verdict will not be set aside because the plaintiff had the right to have his lawyer make an opening statement and the lawyer had the right to refer to what he intended to prove in that statement, and the defendant opened the issue up at trial by his counsel's examination concerning that very subject.
As a part of its charge on the fraud count in the case, the court charged as follows:
 There has been evidence of alleged prior complaints of overgrading of coins against Mr. Hager. If you credit that evidence, you should consider it in light of all of the other evidence only insofar as you may find it to be evidence of intent in connection with the fraud count, number three, or evidence of improper CT Page 5856 conduct or malice.
 You should not infer from it that the defendant possessed the propensity for dishonesty generally.
The court used the term "alleged" to refer to the complaints of overgrading, because it was the jury's function to find whether there were such complaints. To now claim that this permitted the jury to find facts without proof is disingenuous.
The defendant excepted to this portion of the charge on the basis that there were no questions to the defendant regarding overgrading nor were there any full exhibits with regard to any claims of overgrading. Defense counsel indicated he took exception to the court's "characterization of evidence being adduced by the plaintiff that showed overgrading by the defendant in other circumstances" saying," I don't believe there was any, your Honor. "
Most of the evidence in connection with this portion of the charge was introduced by the defense counsel in his examination of the defendant or was introduced by the plaintiff's counsel without objection. The portion of the charge was intended to minimize any possible prejudice to the defendant by limiting the use of this evidence in — the same way approved by the court in Russell v. Dean Witter Reynolds, Inc., supra p. 4 at 193.
In instructions to the jury, this court, inter alia, instructed the jury to:
Consider this charge as a whole.
 In passing on facts, you will be the sole judge of the facts. Consider all evidence, whether presented by the plaintiff or the defendant. . .
 With respect to evidence, in the event your recollection of the evidence differs from mine, or Mr. Foley's, or Mr. Varney's, in their summations, it is your recollection which will control, not mine, nor is it either of the attorneys, because you are the sole finders of facts.
The jury was advised therefore that as sole finders of fact it was their recollection and not the judge's which would control. CT Page 5857
The test to be applied to any part of a charge is whether the charge as a whole presents the case to the jury so that no in justice will be done. State v. Moss, 189 Conn. 364, 370
(1983). A reviewing court must set aside the verdict if it is manifestly unjust and palpably against the evidence. Malmberg v. Lopez, 208 Conn. 675, 679-80 (1988); Zarrelli v. Barnum Festival Society, Inc., 6 Conn. App. 322, 327 (1986).
The trial court should be hesitant to set aside a jury's verdict and must do so only when the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. Trumpold v. Besch, 19 Conn. App. 22, 31, (1989). A court should be especially hesitant to set aside a jury's award of damages. Zarrelli, supra, 326; Shaham v. Capparelli, 23 Conn. App. 468,478 (1990).
The evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable. Kerrigan v. Detroit Steel Corp., 146 Conn. 658, 660 (1959).
"It offends neither logic nor reason that a particular fact may give rise to contradictory inferences. The inference ultimately drawn by the jury need not be the only rational inference possible. Our law confides to the jury the difficult task of deciding among often conflicting inferences which logically and reasonably may flow from the same basic fact. In its consideration of the evidence the jury must rely on its common sense, experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." State v. Rogers, 198 Conn. 53, 59 (1985).
The defendant in response to his own attorney's questions about whether or not complaints against him had been made to the American Numismatical Association indicated that in addition to the plaintiff's complaint, a claim was filed against him by a man from Ohio.
After saying that the only complaints against him were Mr. Diaz's and Mr. Naughton's, Mr. Hager, however, testified on cross examination about a number of complaints: "[t]here could be another one or two in there, but I am not sure."
He also indicated he remembered a Bayer and Pilter complaint but that those were "settled".
In questioning Mr. Hager, his counsel asked him, "Do you recall plaintiff's counsel in his opening statement making mention of the fact that you had been dismissed as a member of the ANA (American Numismatic Association) as a result of a CT Page 5858 complaint being filed against you by someone, do you recall that?" Plaintiff's counsel in his opening statement had referred to the ANA as ANA Grading Service and indicated they graded the coins for Mr. Naughton. The ANA had been identified by reference to plaintiff's counsel's opening statement as a grading service for coins which oversaw coin dealers. Mr. Naughton's own complaint to the American Numismatic Association was in evidence. From that the jury could see the American Numismatic Association has a preprinted form for complaints. One of the printed questions asks the complainant to answer "Has the product been graded independently?" which would indicate to the jury that the ANA was regularly engaged in handling complaints about the grading of coins. A follow up preprinted question asks, "By whom?"
Relying on their common sense, experience, and knowledge of human nature, the jury could have concluded that people would have no reason to complain to a grading service if they received a higher grade and thus a more valuable coin than they paid for from a coin dealer but would do so if they had received a lower grade less valuable coin than they bargained for, i.e, if it were overgraded.
Furthermore, there was evidence before the jury in the form of an article from Barrons, a national financial weekly publication, which went into evidence without objection quoting Hager as follows: "Hager openly admits that he "gouged people" in coins. . ."
Additionally, Mr. Hager's testimony in a unrelated case was admitted as Exhibit 43. After he testified in that case that he had one complaint issued against Al Hager Silver Dollar Specialists, since 1979, he then testified that he settled a complaint regarding a sale from a store on the West Coast, a business he claimed not to own, but with which he had some association. That complaint was initiated by a person named Diaz about coins sent to him. Diaz wanted his money back and returned the coins. The jury could have logically inferred that the value and therefore the grade was not as represented. Mr. Hager also testified in that same unrelated case that there were a couple of previous complaints in 1976 and a couple in 1978.
For all these reasons, the court rejects the defendant's claims that this portion of the charge warrants setting aside the verdict.
The jury had been instructed they were sole fact finders and that their recollection of evidence controlled. There was evidence of other complaints against Mr. Hager. There was evidence from which the jury could infer that those complaints CT Page 5859 were about overgrading and overvaluing of coins. The jury was entitled to consider the Barron's exhibit, quoting Mr. Hager as having admitted gouging others in coin dealing. The instruction advised the jury of the limited use to be made of such evidence in a way approved by the Dean Witter Court. The verdict will not be set aside because of that claim of the defendant.
 IV.
The defendant claims the verdict was excessive. Yet, there was evidence viewed most favorably from the perspective of the plaintiff from which the jury could have found damages proved for failure to pay barter credits; for the difference between the benefit to the plaintiff had he received coins whose verifiable wholesale value at the time of the transfer of the coins was at least the contractually agreed 20% of retail value, as opposed to the actual value amounting to less than 20% which the jury found the plaintiff received: damages for lost appreciation because the kind of coins given in payment did not appreciate as much as the coins bargained for would have so increased; and fraud punitive damages for attorney's fees and costs, all of which could have exceeded the $80,000.00 amount of the verdict. Therefore, the verdict will not be set aside as excessive.
 V.
The defendant has also moved to set aside the verdict on the basis that the jury could not reasonably and legally have reached the conclusion it did. This claim seems to center around the defendant's view that coin grading is a sliding or inexact process, and that grading and value could not be determined by the jury, and that therefore any damages awarded are speculative and not warranted in the evidence.
With respect to the Breach of Contract, Intentional Fraud and Negligent Representation counts, there was a contract between the parties and other evidence from which the jury could have concluded that the defendant who was a coin dealer and wrote a book on the subject represented to the plaintiff who was not a coin expert that certain coins he was transferring in payment had an objective grade and market value but that the actual value of what was so transferred did not approach that grade and value called for by the agreement of the parties. The verdict will not be set aside for that reason.
The defendant's motions for judgment notwithstanding the verdict and to set aside the verdict are denied.
FLYNN, JUDGE. CT Page 5860