[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONRE: MOTION IN ARREST OF JUDGMENT AND MOTION FOR ADDITUR
In this case, tried to a jury, the plaintiff claims injuries arising out of the negligence of the defendants when the parties were involved in a motor vehicle accident in Stamford on February 12, 1986. The defendant Leila Sampson was dropped as a defendant, and the case proceeded against the defendant Barbara Moore, the owner, and the defendant David Moore, the operator, of the car involved with the plaintiff's motor vehicle.
The jury rendered a general verdict for the plaintiff in the amount of $1,981. The plaintiff has made a motion in arrest of judgment, and a motion for additur. In her motion in arrest of judgment the plaintiff claims that the award of $1,900 (sic.) is inadequate as a matter of law, that the jury failed to award damages for pain and suffering, that the award was limited to economic damages only, and thus, is inadequate as a mater of law. Plaintiff further claims that the court gave inadequate jury charges regarding future damages, and "indicated that the plaintiffs have received a monetary settlement from the defendant Sampson in answering the question of the jury. . ."
A trial judge has the duty to set aside a verdict and grant a new trial when he or she finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality. Virgil v. Heintz, 163 Conn. 23, 27,301 A.2d 249 (1972). The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. Virgil v. Heintz,
supra 28; Briggs v. Becker, 101 Conn. 62 (1924). It is the court's duty to set aside the verdict when it finds that it does manifest injustice and is . . . palpably against the evidence.Malmberg v. Lopez, 208 Conn. 675, 679-80, 546 A.2d 264 (1988). If the amount awarded shocks the sense of justice as to what is reasonable, then the inferred conclusion is that the jury was misguided in reaching its decision. Id., 680. As a general rule, it is manifestly unjust for the jury to fail to award damages for pain and suffering when it awards special damages. Jeffries v.Johnson, 27 Conn. App. 471, 476, 607 A.2d 443 (1992); Creem v.Cicero, 12 Conn. App. 607, 611, 533 A.2d 234 (1987).
This automobile accident occurred in 1986. The defendant CT Page 5470 admitted liability, and the trial was conducted basically as a hearing in damages. The plaintiff had been stopped at a red light when the defendant's car struck a third car, pushing it into the plaintiff's. The damage to the plaintiff's car was $375. After the accident, the plaintiff went back to work and didn't seek medical attention until nine days later, when she went to the emergency room of the hospital. She was discharged with instructions to take pain medicines and she continued to administered herself "soaks". She first engaged the services of a chiropractor approximately two months after the accident. She went for chiropractic treatment on a frequent and regular basis for approximately one and half months, at which point the chiropractor testified she reached a "plateau", and thereafter her treatments were "palliative" and occurred about once a month or once every month and a half. She has continued these visits up to the time of trial, a period of about nine years. The chiropractor assigned a permanent partial disability of the cervical spine of 5 to 10%.
An orthopedic surgeon who conducted an independent medical examination testified on behalf of the defendants that he believed that the plaintiff had a 2% partial permanent disability of the cervical spine and described the nine years of chiropractical treatment as "unconscionable". The plaintiff has claimed no loss of time from her job.
The verdict was a general verdict with no special interrogatories, and being a pre-tort reform case, there was no breakdown by the jury on the verdict form for economic and non-economic damages. The plaintiff's medical expenses were $5,641, and she therefore argues that the award of $1,981 was inadequate as a matter of law. Childs v. Bainer, 35 Conn. App. 301,___ A.2d ___ (1994). The award was indeed more than nominal damages, but it is not possible to determine what the jury intended by its award. Although the award was less than $5,641, being the amount of economic damages evidence submitted by the plaintiff, the jury, in this award of $1,981 may well have found the economic damages reasonably attributed to the accident were something less than $1,981, and awarded the balance in non-economic damages. To say that the entire $1,981 represented economic damages simply because it is less than the submitted medical expenses, and thus argue that the jury must have found zero non economic damages would be to engage in pure speculation. Indeed, the jury by their written inquiry to the court during deliberations, requesting a read-back of the transcript which contained the chiropractor CT Page 5471 testimony as to when the plaintiff reached a "plateau" (court's Exhibit 1), indicated that they were interested in when the plaintiff may have begun to receive treatments which were, in their minds, unwarranted by her injuries from the accident. The court cannot find that the jury's verdict was inadequate as a matter of law simply because the award, although more than nominal, was less than the medical specials, where the verdict is a general one and there is no breakdown of the economic versus non economic damages. See Brennan v. Manlapaz, 19 Conn. App. 71,560 A.2d 988 (1989). Further, given all the evidence presented to the jury, upon which it could reasonably have based its verdict, the court cannot find that the jury's award fails to fall somewhere within the necessarily uncertain limits of just damages; nor does the size of the verdict so shock the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. Virgil v.Heintz, 163 Conn. 23, 28, 301 A.2d 249 (1972).
The plaintiff also bases her motion in arrest of judgment on a claimed inadequate jury charge regarding future damages. The court's charge advised the jury of the plaintiff's allegations as follows: "In this case, the plaintiff claims that as a result of the negligence of the defendants she suffered injuries of severe and some of permanent nature to her head, body, limbs and nervous system, and as a result of these injuries she has suffered and with reasonable certainty will continue to suffer great pain. She further claims that she has been and will be permanently prevented from attending to her affairs and duties, and has been or will be compelled to spend or become liable for large sums of money for the care and treatment of her injuries".
In this regard the court further charged the jury as follows: "Now you have considerable latitude in determining what is fair, just and reasonable compensation. In determining what is fair, just and reasonable, you are entitled to consider such things as claims for tests, chiropractor's bills, hospital bills, therapy bills and X-rays, and you may consider such of those things that you find are reasonably probable that the plaintiff would incur in the future as a result of the injuries caused by the defendants.
Also you may award compensation for physical pain and suffering and any permanent impediment or injury, again in an amount you deem to be fair, just and reasonable." CT Page 5472
The court believes that its charge, read as a whole, and in light of the plaintiff's claims, correctly and fairly apprised the jury of the law of damages as it applies to this case, and the jury could not reasonably have been misled into believing it could not award damages for future pain and suffering.
Finally, the plaintiff claims the court "indicated that the plaintiff had received a monetary settlement from the defendant Sampson in answering the question of the jury. . . ." During trial, the defendant offered evidence, through the testimony of the plaintiff, that she had settled her case as against Leila Sampson, an original defendant in the case. No objection was made to this line of questioning, and the plaintiff's answer came before the jury. No questions were asked or answered regarding the amount of the settlement. Plaintiff's counsel made no motion to strike the questions or answers, or to have the jury disregard them, and no such instruction was given. During deliberation, the jury made written inquiry with regard to several points, all of which are contained in their note to the court, marked court Exhibit 1. One question asked, "Did she [plaintiff] receive a cash settlement from Mrs. Swamson (sic)? How much?". The court then addressed counsel, prior to the jury's return to the courtroom, as follows: "The Court: Well, we had a chambers conference, and pursuant thereto what I intend to do is get the jury back in to advise them that as to three of the five questions there will be no answers because they involve a request for additional evidence, which, of course, is not permitted. And that in the other two we need to find the testimony in the transcript of the record and read it to them as soon as we can."
With the jury back in the courtroom, the court responded to the jury's questions in pertinent part, as follows:
"The Court: Thank you, Ladies and gentlemen, I have your inquiry of yesterday which consists of basically five areas of inquiry.[,] and I am going to tell you the problem we have, not irresolvable, but a temporary problem. The way to answer questions is to have the testimony read back to you which is pertinent to the information you are looking for.
On Tuesday there was a court stenographer taking down the testimony. That court stenographer is not here today. She happens to be off on Fridays. This was not a monitor. It was a stenographic record as is being taken now. CT Page 5473
What we are going to try to do is we have here (sic) notes, and we think that they can be read. And we will be in a position in a short while to read back what you need to hear, but that only refers to two of the five areas that you inquired about.
There are three questions that we cannot help you with because they involve evidence that is not in the case. Everything that's in the case you've heard or the exhibits are there in front of you. There's not going to be any other evidence. You can't ask or receive information, for example, about did she receive a cash settlement from Mrs. Swanson? How much? That's not in evidence. It's not going to be in evidence and, therefore, you cannot even take that into consideration. You can't speculate whether there — how much it was? whether she received it? You can't speculate with respect to that at all."
The plaintiff claimed that the court's response to the jury's inquiry left an impression that there was in fact some settlement amount, and that there was removed from the jury's consideration the option to find that no cash settlement was involved. It bears repeating that the fact of settlement was admitted without objection by the plaintiff. The court cautioned the jury, in its response to their question, that they were not to speculate with respect to how much the settlement was for. The court must assume that the jury followed its instructions and did not in fact speculate. The court believes that it fairly responded to the jury's inquiry and that no prejudice to the plaintiff resulted.
The plaintiff's motion in arrest to the judgment is denied. Plaintiff's motion for additur, based upon the same claims, is also denied for the reasons set forth herein.
So Ordered.
D'ANDREA, J.