## JOHN R. BARBIERI, JR., ADMINISTRATOR (ESTATE OF JOHN BARBIERI III) *v.* MAUREEN E. TAYLOR ET AL.

SUPERIOR COURT      JUDICIAL DISTRICT OF WATERBURY      FILE No. 790050227S

Memorandum filed July 11, 1980

*Cohen & Altschuler,* for the plaintiff.

*Kenny & Brimmer,* for the defendants.

1

BERDON, J. The plaintiff brought this action as administrator of the estate of his deceased son, John Barbieri III, for damages as the result of his wrongful death. The plaintiff's decedent was a passenger in an automobile operated by the defendant Maureen E. Taylor, and owned by her father, the defendant David A. Taylor, which crashed into a tree killing the decedent on July 6, 1979. The cause of the tragedy was clearly the negligent operation of the family vehicle by the defendant Maureen E. Taylor. The jury found the issues for the plaintiff against both defendants and awarded the estate damages in the amount of $15,000. The sole issue before the court is the plaintiff's motion to set aside the verdict on the grounds that it is inadequate. For the reasons set forth herein, the court agrees that the verdict of $15,000 cannot stand because it is inadequate as a matter of law.

A serious constitutional issue can be raised by setting aside a verdict of the jury. In a case such as this, "[l]itigants have a constitutional right to have issues of fact decided by the jury." *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 169, 169 A.2d 265 (1961). "The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970); *Jacobs* v. *Goodspeed,* 180 Conn. 415, 429 A.2d 915 (1980); *Gosselin* v. *Perry,* 166 Conn. 152, 168, 348 A.2d 623 (1974). Clearly then, the amount of damages is within the province of the jury. *Szivos* v. *Leonard,* 113 Conn. 522, 525, 155 A. 637 (1931). "To justify setting aside a verdict, something more than a doubt of its adequacy must exist." *Vetre* v. *Keene,* 181 Conn. 136, 141, 434 A.2d 327 (1980). Therefore, upon re-

viewing the adequacy of an award, the court must move cautiously to determine whether it should interfere with the verdict of a jury. However, it is the court's duty to set aside the verdict when it finds that "it does manifest injustice, and is . . . palpably against the evidence. . . ." *State* v. *Chin Lung,* 106 Conn. 701, 704, 139 A. 91 (1927). In a case such as this the test to be applied to determine if a verdict should be set aside, "is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." *Birgel* v. *Heintz,* 163 Conn. 23, 28, 301 A.2d 249 (1972); *Sellner* v. *Beechwood Construction Co.,* 176 Conn. 432, 438, 407 A.2d 1026 (1979); *Marin* v. *Silva,* 156 Conn. 321, 323, 240 A.2d 909 (1968). Of course, "[w]hether the court would have reached a different verdict is not in itself decisive." *Lee* v. *Lee,* 171 Conn. 1, 4–5, 368 A.2d 11 (1976).

With these principles in mind, the court must look to the law pertaining to damages that the jury should have considered for the wrongful death. The jury were instructed that under the statute providing for such damages, they were to consider three elements, to wit: ante mortem expenses, funeral expenses and "just damages." General Statutes § 52-555. The first two elements, ante mortem and funeral expenses in the amount of $4981.09, were conceded by the defendants in final summation.

This left the sum of $10,018.91 (the balance of the $15,000 award), to be attributed to the "just damages" provided by the statute. The just damages under the statute include "(1) the value of the decedent's lost earning capacity less deductions for . . . [his] necessary living expenses and taking into consideration that a present cash payment will be made, (2) compensation for the destruction of . . . [his] capacity to carry on and enjoy life's activities in a

way . . . [he] would have done had . . . [he] lived, and (3) compensation for conscious pain and suffering."[1] *Katsetos* v. *Nolan,* 170 Conn. 637, 657, 368 A.2d 172 (1976). In order to determine whether the verdict should be set aside, the "evidential underpinnings of the verdict itself must be examined." *Jacobs* v. *Goodspeed,* supra, 417.

The decedent at the time of his death was an eighteen-year-old high school graduate. The uncontroverted evidence indicated that he was well liked and respected in the community. A school teacher and a school administrator testified that he was industrious, a good student in vocational courses, had an excellent attendance record and was popular. There was evidence that he had a good social life, that he enjoyed hunting and fishing with his father, and that he participated in sports. The evidence also indicated he was in good health and that he always worked in a part-time job while attending school.

Although the decedent did not excel academically, he was mechanically inclined and showed great promise as a result of this aptitude. This tragic accident occurred during the summer following the decedent's graduation from high school. He had received a scholarship to a welding school which was competitively awarded and planned to attend that school in September of 1979. After appropriate training and apprenticeship, the evidence indicated that he would have earned $5 an hour as an apprentice and from $7 to $9 an hour as a journeyman welder; in other parts of the country, he could have earned substantially more as a welder. Furthermore, it was stipulated that the mortality tables indicated that a person of his age had a life expectancy of 54 years. An expert testified that statistics prepared by the United States government indicated the work expectancy of an eighteen-year-old high school graduate was 43 years.

---

[1] The plaintiff did not allege or prove pain and suffering.

Clearly, when considering the foregoing facts, the award of $10,018.91 by the jury for the destruction of the decedent's capacity for enjoying life and the destruction of the decedent's earning capacity was, as a matter of law, inadequate.[2] The court concludes that such a verdict must have been based upon a misunderstanding of the law including the elements of damage the jury were required to consider.

In addition to the foregoing, there was a great deal of sympathy for the defendant Maureen Taylor. During the trial this seventeen-year-old defendant demonstrated great emotional distress in the presence of the jury. Furthermore, counsel for the defendant in summation argued in substance to the jury that the defendant would carry the death of the decedent with her for life and that they should not further brand her with the "mark of Cain." Surely, the defendant's emotional displays and these remarks appealed to the sympathy of the jury. The court in its instruction cautioned them to disregard the remarks and to put aside their sympathies. Notwithstanding this instruction, it is obvious from the size of the award that the jury were influenced and allowed sympathy to enter into their verdict. See *Jerz* v. *Humphrey*, 160 Conn. 219, 224, 276 A.2d 884 (1971); *Lupak* v. *Karalekas*, 147 Conn. 432, 435, 162 A.2d 180 (1960).

In sum, the verdict of $15,000 for the wrongful death of an eighteen-year-old boy such as the decedent in this case cannot stand. This is not a case where the amount of the award can be tolerated because the jury merely exercised poor judgment. *Jerz* v. *Humphrey*, supra, 226. Such a verdict shocks the conscience of the court. The court must conclude

---

[2] In addition, an economist testified that present value of the loss due to the destruction of the decedent's earning capacity is $606,000 if he married and had two children, and if he remained single during his entire life it would have been $326,000. The court, however, does not take this evidence into consideration in deciding the motion to set aside.

that the jury failed to follow its instructions as to the elements of damage which they were to consider and allowed sympathy to creep into their verdict, therefore rendering a verdict which was biased, prejudicial and manifestly inadequate.

Notwithstanding the inadequacy of the verdict, it should not be set aside solely on this ground "until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable." General Statutes § 52-228b. When determining the additur, the court must make a fair appraisal of the just damages which should be awarded to the estate. See *Brower* v. *Perkins,* 135 Conn. 675, 682, 68 A.2d 146 (1949); *Rosa* v. *American Oil Co.*, 129 Conn. 585, 589–90, 30 A.2d 385 (1943). In other words, a court may not award less than full damages which may be tolerated as being adequate if awarded by a jury; any such additur together with the verdict of the jury must represent fair, just and reasonable compensation in accordance with the statute providing for damages for wrongful death.

On the basis of all the evidence introduced, the court is of the opinion the sum of $145,000 is the fair, just and reasonable value of the decedent's lost earning capacity[3] and compensation for the destruction of the decedent's capacity to carry on and enjoy life's activities in a way that he would have done had he lived; and the sum of $4981.09 for ante mortem and funeral expenses; in all, the fair, just and reasonable compensation for the wrongful death of John Barbieri III is the rounded sum of $150,000. Accordingly, the court is of the opinion that there should be an additur to the jury's award in the amount of $135,000.

---

[3] The value is determined after making due allowance for necessary living expenses and taxes and discounting the amount because a cash payment of the whole will be made at this time.

It is therefore ordered that the verdict be set aside, unless within two weeks from the filing of this decision, the defendants shall file with the clerk an additur in the amount of $135,000. If such additur is so filed, judgment may enter upon such filing in the sum of $150,000, together with taxable costs. If the additur is not filed within the said two week period, the verdict is set aside and the court orders a new trial on the issue of damages only.