[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE THE VERDICT (138)
Defendants advance four reasons to set aside the findings of the jury on each and/or all four counts and the award of damages in the amount of $93,000.00 from the defendants.
 "In order to determine whether the verdict should be set aside the `evidential underpinnings of the verdict itself must be examined.'" Barbieri v. Taylor, 37 Conn. Sup. 1, 4 (1980).
FIRST REASON
"The agreements between Mabel Andrus and the Masonic Charity Foundation which formed the basis of the contract between were clear and unambiguous and could not properly be interpreted to permit any responsibility on the part of the Defendants beyond April 24, 1974 and the verdict of the jury based on events which occurred long after that date was clearly in error and a misinterpretation of the contracts."
The "evidential underpinnings" of the "clear and unambiguous" agreements between Mabel Andrus and the Masonic Charity Foundation are quoted in her "Application" paragraph 15 as follows:
 "A. It is agreed and understood that if at the time of my death my assets held by The Masonic Charity Foundation have not been depleted I hereby give any and all of my unused assets to my legal heirs." (A-1)
Mabel Andrus later executed another document stating in paragraph 2:
 "In the event that at the time of my death there is any unexpended balance left in this fund the same shall be paid and transferred by the Foundation to the Executor or Administrator of my estate." (A 21)
The jury returned a "Plaintiff's Verdict" on all four counts that awarded "the plaintiff damages from the defendants Frances and Butler Andrus, in the amount of $93,000.00."
The following Interrogatory was submitted to, answered, and returned by the jury:
"Was the block of 1300 shares of Ten CT Page 408 Hartford Avenue Corporation stock used, depleted and expended, as those words are used in the application marked `Exhibit A-1' and the agreement marked `Exhibit A-21,' either on April 24, 1974 or August 26, 1988? ANSWER: Yes No X
 If your answer is "Yes," then return a verdict for the defendants, Frances and Butler Andrus. If your answer is `No,' then continue with your deliberations until you have reached a verdict and can fill out the jury verdict forms.)
 (/s/ Robert Infantie Signature of Foreperson
November 22, 1991"
Mabel B. Andrus died on April 24, 1974. The jury's finding in the interrogatory removes from speculation or guesswork the status or value of the escrow stock on that date as a matter of fact. The jury specifically found the stock was not "used, depleted and expended, as those words are used in the application." (Exhibit A-1)
The jury in reason was aware that the stock was held by the Foundation as security for the debt owed to it. Evidence as to its value on that particular date, i.e., "the time of my death" cannot be considered solely as a matter of law, as defendants claim, for the court to find its value "used, depleted and expended." The jury easily found support in the evidential underpinnings that the stock whatever its ultimate value was not depleted. It existed as an asset as a matter of fact on April 24, 1974.
Defendant's conclusion that the verdict was clearly in error and a misinterpretation of the contracts between Mabel Andrus and the Masonic Charity Foundation presents a unilateral self-serving conclusion ignoring the fact finding function of the jury after weighing the entire testimony of the witnesses, their hostility toward each other, their credibility and the material evidence of record. The series of events, the chain of custody of the stock and its ultimate worth or value presented to the jury by direct and circumstantial evidence a proper foundation for the answer of record in the above quoted interrogatory.
SECOND REASON CT Page 409
"The jury did not have before it sufficient evidence of the value of the stock in Ten Hartford Avenue, Inc. in 1988 to base a decision on the value of that stock, except through the exercise of speculation and supposition, and therefore could have rendered a judgment only for nominal damages."
The evidentiary underpinning of the worth or value of the stock in 1988 starts with the premise that the stock was an asset of Mable Andrus of sufficient worth to be accepted as collateral for her hospitalization. It also was considered an asset of sufficient value "for the wife of an heir" of Mabel Andrus to negotiate a settlement of her hospitalization account and pay the settlement in full thereby gaining control of 100% of the corporate entity.
The jury requested that the entire testimony of this wife of said "heir" be repeated or played back in full. Her testimony was replete with the history of this "asset" i.e. the stock of the corporation that owned this real estate in the center of the Town of Granby. She described the real estate as a strip mall of stores that provided rental income to the corporation. The corporation kept records. Some were shown to the attorney for the hospital during settlement negotiations on Mable Andrus' account. The attorney obtained a waiver of any past due interest on the account. This "heir" and his wife wanted the collateral stock back. She obtained cash to settle the debt and did settle it. She and her husband desired to rent or lease the property at that time. They had no desire to sell the real estate then.
Her husband (the heir) was an architect. He designed buildings and was in control of the mall. The records were kept by her and kept in their home. They controlled the mortgage and its payments. They desired to retain the property. It was listed for "lease" with a broker. After the settlement it was sold for a substantial sum. The purchasers subsequently filed for protection under the bankruptcy law.
The jury had the benefit of this background. The jury also had the benefit of the testimony of Robert M. Riskin, CPA, concerning the ultimate transfer of the corporate asset and the obligation of record re mortgage balance, sales commissions, liabilities of the corporation, other deductions, and the fact that the property went into foreclosure proceedings. Mr. Riskin was subjected to direct and cross-examination. He qualified as an expert and his testimony provided an adequate base for the jury's award of damages. The jury's award of damages was unanimous.
THIRD REASON CT Page 410
"Any evidence which the jury did have before it concerning the value of the stock in Ten Hartford Avenue, Inc. as of 1988 was evidence that was introduced after the Plaintiff had rested his case and was allowed to reopen the case for the purpose of presenting further evidence, which reopening was permitted by an abuse in the exercise of the Court's discretion in allowing him to reopen."
This reason in effect requests this court to engage in what would essentially be appellate review of its own decision.
 "Whether or not a trial court will permit further evidence to be offered after the close of testimony in the case is a matter resting within its discretion."
 "In any ordinary situation if a trial court feels that by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." Hauser v. Fairfield, 126 Conn. 240, 242 (1940).
FOURTH REASON
"The amount awarded by the jury to an excessive award far beyond any amount which could be considered reasonable or within the rightful province of the jury based on the evidence introduced at trial and at least $70,000.00 of the amount awarded in the verdict should be remitted, or the verdict should be set aside."
As noted above the jury awarded $93,000.00 in damages to the plaintiff. There was sufficient evidence that the property closed at the sale for in excess of $2,000,000.00. There were adjustments for commissions, mortgage, liabilities, deductions, etc. The purchaser later defaulted on his mortgage and the property is presently under foreclosure.
The damages awarded by the jury are against defendants Butler W. and Frances Andrus. The verdicts returned and jury award of damages speak to the prayers for relief attached to the complaint.
The first issue for the court on this reason is whether CT Page 411 this award so "shocks the sense of justice as to warrant the court's interference."
These defendants have not isolated in particular, or stated in general, any claim of prejudice, passion, bias, sympathy or that the jury suffered a misunderstanding of the law or facts on this issue of excessiveness.
 "The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." Pisel v. Stamford Hospital, 180 Conn. 314, 343 (1980).
Judge Berdon in the Barbieri case above cited, has clearly recorded the law that must be considered before setting aside a verdict of the jury. This jury returned verdicts on four counts as of record. Each of the four counts presented issues of fact as to which there is room for reasonable differences of opinion among fair-minded men. The jury passed upon these issues.
There is no reason for the court to second-guess the jury.
Denied as to all four reasons above quoted.
JOHN N. REYNOLDS STATE TRIAL REFEREE