The plaintiff brought this action as administratrix of the estate of her deceased sister, Sheila Harvell, for damages CT Page 5638 as the result of her wrongful death. The plaintiff's decedent was a tenant of the defendant YWCA in Hartford, Connecticut when a fire occurred on August 4, 1989 in a lounge adjoining the room where the decedent was sleeping. The fire was caused by a short circuit in wires servicing a portable closet. Smoke from the fire apparently caused the decedent to lose consciousness while in her room and she died shortly thereafter.
The plaintiff alleged that the defendant, inter alia, was negligent in failing to maintain the wires in a safe condition. The defendant filed two special defenses claiming that the plaintiff Harvell was negligent in that: (1) at the time of her death her blood alcohol level was .10 and thus she was under the influence of alcohol; and (2) that the decedent had removed the batteries from the smoke detector located in her room prior to the start of the fire.
Dr. Richard Martin, an economist for the plaintiff, testified that the value of her life ranged anywhere from $671,700 down to $448,600 depending on whether in the future the decedent might have remained single, gotten married, or gotten married and had two children.
The economist for the defendant, Ward S. Curran, testified that her product activity had no value since the value of everything she produced was, in fact consumed by her prior to her death. The Court finds Dr. Curran's testimony unacceptable for serious consideration.
It was agreed that her life expectancy was 47 years at the time of her death. The jury returned a verdict in favor of the plaintiff for $40,000 and assigned 49% contributory negligence under present Connecticut law leaving a net judgment to the plaintiff of $20,400.00. The sole issue before the Court with respect to the motion is whether or not to set the verdict aside on the grounds that it is inadequate.
A Court should be especially hesitant to set aside a jury's award of damages. This is particularly true in a wrongful death case.
The assignment of damages "defies any precise mathematical computation," Floyd v. Fruit Industries, Inc., 144 Conn. 659,675; and, therefore establishing damages for wrongful death is a task peculiarly within the expertise of a jury. Kiniry v. Danbury Hospital, 183 Conn. 448, 461; McKirdy v. Cascio, 142 Conn. 80,85. "However, it is the Court's duty to set aside the verdict when it finds that `it does manifest injustice, and is . . . probably against the evidence. . . .' State v. Chin Lung, 106 Conn. 701,704. Barbieri v. Taylor, supra, 37 Conn. Sup. 3.'" Zarelli v. Barnum Festival Society, Inc., 6 Conn. App. 322, 326, 327. CT Page 5639
In a case such as this the test to be applied to determine if a verdict should be set aside is "whether the jury's award falls somewhere within the necessary uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to convey the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." Barbieri v. Taylor,37 Conn. Sup. 1, 3 and cases cited therein.
In this case the plaintiff made no claim for the value of the decedent's lost earning capacity but based the claims solely on compensation for the destruction of the decedent's capacity to carry on and enjoy life's activities in a way she would have done had she lived and compensation for conscious pain and suffering.
The decedent at the time of her death was 33 years old and had led a difficult life. Evidence revealed, through medical records for five years prior to her death, that she was treated for substance abuse, depression and alcohol. Testimony from a State Police Officer indicated she was cooperating with the State Police regarding cocaine traffic of which she had knowledge. Her relationship with men involved one short-term marriage and two fairly long other relationships with men that involved some physical abuse to her. She had also forged some checks belonging to one of these persons. Just shortly prior to her death she had moved into the YWCA in an effort to break away from her sad environment and to make a new life for herself. She was about to start a new job and looked forward to sharing an apartment with a friend that she met at the YWCA. Early on in the trial, which lasted about five and a half weeks, there was evidence from her co-workers that she was usually cheerful, cooperative, sharing, willing to help others out in the work place and was not a complaining person.
With respect to the actual events of the minutes leading up to the death of the decedent, there was testimony that her bed was rumpled indicating that she had been in the bed and further evidence that she was found in her bathroom on the floor on her side overcome by the smoke, which had entered her room. It does not need any imagination to feel the terror the decedent must have experienced as she tried to escape the horror of what was happening to her.
The defense presented the testimony of her two lovers who did not think very highly of her.
The defense also attempted to elicit sympathy for the defendant by demonstrating that it was a non-profit institution and although the Court instructed the jury with the usual charge regarding sympathy, that non-profit claim seems to have made an impression. CT Page 5640
It is obvious to the Court that the $40,000 was an award for pain and suffering only and that the jury refused to award any compensation for the destruction of the life itself. Such a verdict shocks the conscience of the Court. The Court feels that the jury failed to follow its instruction as to the element of damages which they were to consider and allowed sympathy to be a consideration in rendering the inadequate verdict which was not fair, nor just nor reasonable.
Section 52-228b states in part as follows: "No verdict may be set aside solely on the grounds that the damages are inadequate until the parties have first been given an opportunity to accept an additur to the verdict of such amount as the Court deems reasonable."
When determining the additur, the Court must make a fair appraisal of the just damages which shall be awarded to the estate. Any such additur together with the verdict of the jury must represent fair, just and reasonable compensation in accordance with the statute providing for damages for wrongful death.
On the basis of all the evidence introduced the Court is of the opinion that in addition to the $40,000 already awarded by the jury the sum of $200,000 is the fair, just and reasonable value as compensation for the destruction of the decedent's capacity to carry on and enjoy life's activities had she lived. The total gross award is therefore increased to $240,000 against which the 49% contributory negligence must be assessed in the amount of $117,600.00 leaving a net award of $122,400 due the plaintiff.
It is therefore ordered that the verdict be set aside, unless within two weeks from the filing of this decision the parties shall file with the clerk an agreed additur of $102,000.00. If such additur is filed, judgment may enter upon such filing in the sum of $122,400 together with taxable costs. If the additur is not filed within the said two-week period, the verdict is set aside and the Court orders a new trial. "Because the plaintiff's decedent was found to be substantially contributorily negligent, the issue of damages and liability are `inextricably woven' and both issues must be retried in order to avoid an injustice to the defendant." Frazer v. Brown, 209 Conn. 450, 457.