[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT (#186) AND MOTION TO SET ASIDE VERDICT AND TO RENDER JUDGMENT IN ACCORDANCE WITH MOTION FOR DIRECTED VERDICT (#187)
"This case focuses on the tension between a litigant's constitutional right to have issues of fact determined by a jury and the trial court's legal discretion to overturn a verdict in order to prevent a manifest injustice . . . in setting aside a verdict the court has deprived a litigant of his constitutional right to have disputed issues of fact decided by a jury. . . . The evidential underpinnings of the verdict must be examined."
"Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand. . . ." Jacobs v. Goodspeed, 180 Conn. 415, 416-417 (1980); Barbieri v. Taylor, 37 Conn. Sup. 1 (1980).
(#186)
I. CT Page 6713
Defendant claims that there was no evidence before the jury from which it could have found that the plaintiff suffered $5,500.00 in actual damages as a result of the defendant's CUTPA violation which it found to be the "timing of payments" "from the plaintiff to the defendant". (sic)
Interrogatory 4 states:
 "Do you find that the timing of the Defendant's, Baldwin-Stewart Electric Co.'s payments to the Plaintiff, Raven Corporation, constituted a violation of CUTPA?
Yes X "
Defendants also claim, in this paragraph that there was no evidential basis for the ascertainable loss found by the jury, and a single instance or isolated instance cannot constitute a CUTPA violation.
A review of the testimony of James Gary provides "evidential underpinnings" for the jury's findings in interrogatory 4 above. Mr. Gary testified that defendant's delay in payment created a cash plan problem, that employees and other creditors were not timely paid and plaintiffs had to borrow money as a result of the delays in payment.
"The words `any ascertainable loss' . . . do not require a plaintiff to prove a specific amount of actual damages. . . . Where drafters meant `actual damages', they employed those exact words . . . the inclusion of the word `ascertainable' to modify the word `less' indicates that plaintiffs are not required to prove actual damages of specific amount. `Ascertainable' means `capable of being discovered, observed or established. . . .' `Loss' has been held synonymous with deprivation, detriment and injury. . . . It is a generic and relative term . . . `damage' on the other hand is only a species of loss. The term `loss' necessarily encompasses a broader meaning then the term `damages'." Hinchliffe v. American Motors Corporation, 184 Conn. 607, 612-613 (1981).
Section 42-110g(a) states in part:
 "Any person who suffers any ascertainable loss of money or property, real or personable, as a result of the use or CT Page 6714 employment of a method, act or practice prohibited. . . . may bring an action . . . to recover actual damages."
Clearly a method, act or practice is in the singular and covers an isolated incident. . . .
(#186)
 II.
Defendant claims in this paragraph that this verdict in favor of the plaintiff on the First Count of the revised complaint is contrary to law and against the evidence in that the jury improperly relied upon parol evidence in finding that the defendant was obligated to pay the plaintiff for its work on the project pursuant to the CLA 12 form.
In Lester v. Resort Camplands International, Inc., 27 Conn. App. 59,65-66 (1992) the Court discusses the use of extrensic evidence to vary or contradict the terms of an integrated written contract. The conduct of the parties, the circumstances surrounding the meetings and negotiations involved, the evidence concerning the impact of federal funds trickling down to the State of Connecticut, Department of Transportation, general contractor (defendant) and subcontracts (plaintiff) clearly support the conclusion that "a complete integration of an agreement" was never reached."
The testimony and evidence that the plaintiffs and defendant were "first time players" and were in effect "playing it by ear" supports the conclusion that a completely integrated contract never existed. There was no violation of the parol evidence rule.
Motion denied.
(#187)
This motion relies on the prior motion for directed verdict which was denied. Defendant concludes that the CLA Form was a subcontract approval form and no more. Defendant concludes also that Raven understood it to be a mere subcontract to perform work. CT Page 6715
The jury sifted and weighed the evidence. The court determined that the parties did not intend to integrate their negotiations in any written contract. The jury had all written documents, observed the plaintiff's witnesses and the witnesses called by defendant. The jury received all testimony and physical evidence concerning the circumstances surrounding all negotiations. The court gave the instructions requested by the defendant on the issue of parol evidence.
Motion denied.
John N. Reynolds State Trial Referee