[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR JUDGMENTNOTWITHSTANDING THE VERDICTS (127) DEFENDANT'S MOTION TO SET ASIDEVERDICTS AND FOR NEW TRIAL (128), AND PLAINTIFFS'MEMORANDUM IN OPPOSITION (TO 127 AND 128)
The Revised Complaint (103) in the First Count claimed judgment against the defendant for a) compensatory damages pursuant to 42 U.S.C. § 1983; b) punitive damages pursuant to CT Page 5149-EEE42 U.S.C. § 1983; c) attorney's fees and costs pursuant to42 U.S.C. § 1988: in the Second Count claimed judgment against the defendant for a) compensatory damages pursuant to § 42-110g
of the Connecticut General Statutes; b) Punitive damages pursuant to § 42-110g (as above); c) attorney's fees and costs pursuant to § 42-110g (as above); and in the ThirdCount claimed judgment against the defendant for a) compensatory damages pursuant to the common law of the state of Connecticut; b) punitive damages pursuant to the common law of the state of Connecticut; and c) costs pursuant to the common law of the state of Connecticut. Defendant's counterclaim prayed for (1) damages; (2) use and occupancy; and (3) cost of collections, etc.
The jury returned a Verdict Form addressing the First Count
by answering interrogatories finding that the defendant through its agents, servants or employees engaged in a concerted pattern of activities which deprived the plaintiffs of their rights under the Constitution and laws of the United States; that said acts were the proximate cause of the destruction of plaintiff's business valued at $100,000.00; that the value of mental and emotional pain and anguish suffered as to William Severino, Sr. is $5,000.00; that the value of pain and anguish to Eileen Severino is $10,000.00 and that the amount of punitive damages found is $0.
First Count
The predicate for the first count is found in Section 1983 of Title 42 of the United States Code that states:
 "Every person who, under color of any statute, ordinance, regulation, custom or usage of any State of Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
Connecticut General Statutes "Sec. 1-1, Words and phrases (2)" mandates: CT Page 5149-FFF
 "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language;."
The American College Dictionary defines "any" as follows: "1) one, a, an, or some: whatever or whichever it may be 2) in whatever quantity or number, great or small . . . 8) in any degree, to any extent; at all."
Since February 25, 1913, the ratification of Article XVI of the Amendments to the Constitutions of the United States, the Congress has had power to lay and collect taxes on incomes, from "whatever source derived."
The commonly approved usage of the phrase "whatever source derived" is that the congress has power to lay and collect taxes on any and all income (except sources exempt by statute). Section 1983 above clearly applies to any citizen or person subjected "to the deprivation of any rights, privileges or immunities secured by the Constitution and laws." "Any" and/or "whatever" apply equally to the Amendment and the statute as all encompassing in generality of application and intended purposes.
Paragraph 5 of First Count of the Revised Complaint alleges:
 "5. Throughout the year 1988, the year 1989, and first half of the year 1990, the defendant, acting through its agents, servants and employees, engaged in a concerted pattern of activity having as its purpose the deprivation of the plaintiffs' property interest in the concession described above. This pattern of activity included instigating and encouraging various forms of competition with the plaintiffs' business, refusal and failure to provide the plaintiffs with an adequate or appropriate location for conducting their aforesaid business, failure and refusal to provide reasonable or adequate security for the plaintiffs, secret meetings and negotiations with one or more other persons in an effort to cause such other person or persons to take over the plaintiffs' said concession, refusal to negotiate with the plaintiffs in good faith concerning contractual disputes, and other forms of harassment and misconduct."
In this courts view the Revised Complaint and the above quoted paragraph 5 thoroughly apprised the defendant of the CT Page 5149-GGG plaintiffs' intent to pursue claims founded on the commonly approved usage of the language of § 1983 above quoted. The intent of § 1983 is clearly to provide a remedy to any
citizen subjected to the deprivation of any rights (etc.). The statute provides nothing in the way of elements or guidelines for a fact finder. The apparent intent of the congress was to allow the fact finder to order the conclusions that this jury did.
 "A serious constitutional issue can be raised by setting aside a verdict of the jury. In a case such as this [l]itigants have a constitutional right to have issues of fact decided by the jury. Bambus v. Bridgeport Gas Co., 148 Conn. 167, 169 A.2d 265 (1961). "The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of a trial by jury includes the right to have issues of fact as to which there is room for reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court."
Barbieri v. Taylor, 37 Conn. Sup. 1, 2 (1980).
 In order to determine whether the verdict should be set aside the "evidential underpinnings of the verdict, itself must be examined" Barbieri, p. 4.
The theory on which this case was presented to the jury was that the Parking Authority (agents, etc.) engaged in a concerted pattern of activity having as its purpose the deprivations of the plaintiffs' property interest (in the business). Correlatively, plaintiffs allege that they were never afforded a reasonable opportunity to negotiate with the Parking Authority for a renewal of their lease and that conduct of the Parking Authority (agents etc) deprived plaintiffs of their property without due process of law and in addition deprived the plaintiffs of substantive due process of law.
Substantial testimonial and material factual evidence was presented to the jury that plaintiffs were not afforded fair and reasonable treatment by the Parking Authority. The Parking Authority's considerations and relations with the plaintiffs were casual and perfunctory. The Parking Authority appeared to be favoring another tenant who subsequently succeeded plaintiffs in CT Page 5149-HHH the ownership and operation of the business for which the jury awarded plaintiffs $100,000.00.
The plaintiffs presented evidential underpinning that agents of the defendant instigated and encouraged another tenant to compete with plaintiff in the sale of coffee and snacks in competition with plaintiff's business and that that tenant followed plaintiffs as operator of the business. There were evidential underpinnings of failure of defendant to provide adequate or appropriations location for conducting their business (lack of appropriate storage). There were evidential underpinnings that defendant failed or refused to provide reasonable or adequate security for the plaintiffs. There were evidential underpinnings that defendant's agents met secretly with the tenant who succeeded plaintiffs in the operation of the business.
There were evidential underpinnings that plaintiffs were unsuccessful in their attempt to negotiate with defendant in good faith concerning contractural disputes and attempts to negotiate in good faith. These evidential underpinnings are adequately and aptly supported in the record by the correspondence and testimony of the plaintiffs (husband and wife), the testimony of their son and correspondence on their behalf by Attorney Johnathan J. Einhorn and David J. Skolnick.
These evidential underpinnings clearly support the jury's verdict and facts found in the answers to the interrogatories on the First Count. Any one or the totality of these evidential underpinnings supports the jury's findings.
Defendant advances the fact that the plaintiffs failed timely to make payments of the adjusted rent as required in the lease. Thus is no dispute on that fact. There was substantial evidence before the jury on that fact and a verdict form and interrogatories returned by the jury properly addressed that issue. There was substantial evidence on the First Count to support the claim of a concerted pattern of activity having as its purpose the deprivations of the plaintiffs' property interest that preceeded the fact of the adjusted rent issue. The pleadings in the counterclaim of defendant created the independent issues of back rent adjustments and use and occupancy charges. Separate and distinct issues properly presented questions of fact for the jury. CT Page 5149-III
Second Count
The jury returned a Verdict Form addressing the Second Count
by answering interrogatories finding this defendant, through its agents, servants or employees, after August 27, 1987, engaged in unfair or deceptive acts or trade practices in dealing with the plaintiffs; that said acts were intentional or with reckless disregards of the plaintiffs' rights; that the acts were the proximate cause of the injuries and consequent damages sustained by the plaintiffs; that the fair, just and reasonable amount of money to compensate the plaintiffs for their injuries caused by defendant's violation of Connecticut Unfair Trade Practices Act is $100,000.00; and that the amount of punitive damages found is $0.
The predicate for the Second Count is alleged in paragraphs 3 and 6 of this count quoted as follows:
 "3. During all times relevant to this action, the defendant was engaged in trade and commerce within the State of Connecticut as those terms are defined in Section 42-110a(4) of the Connecticut General Statutes.
 6. The conduct of the defendant described herein constituted unfair and deceptive acts and practices in the conduct of trade and commerce within the meaning of Section 42-110b
of the General Statutes."
Section 42-110a(4) states:
 "(4) "Trade" and "commerce" means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."
Section 42-110b states:
 Sec. 42-110b. Unfair trade practices prohibited. Legislative intent. (a) No person shall engage in unfair methods of competition and unfair or deceptive CT Page 5149-JJJ acts or practices in the conduct of any trade or commerce.
Section 1-1 (k) extends and applies the word "person" to "communities" etc. It is clear that § 42-110b was intended to apply to the conduct of any trade or commerce. The application of the commonly approved usage of "unfair" — "unfair or deceptive acts or practices in the conduct of any trade or commerce" when considered under § 42-110b(d) that states the intention of the legislature that the Unfair Trade Practices Act "be remedial and be so construed is clear. "This expressed intent leaves no doubt as to the purpose i.e. to afford a remedy or to remedy something. The jury's verdict and facts found expressed that conclusion. Defendant contends that CUTPA does not apply to municipalities.
It is apparent to this court that this was a proper case before this jury as above stated. A municipality is a community.
Third Count
The jury returned a Verdict Form addressing the Third Count
by answering interrogatories finding that after August 27, 1987 an agent, servant or employee of the defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was likely to result of his or her conduct that the conduct of such agent, servant or employee after August 27, 1987 was extreme and outrageous; that William Severino, Sr. suffered emotional distress after August 27, 1987 that was severe or extreme and the damage he suffered was $5,000.00; that the conduct after August 27, 1987 was a reckless indifference to the rights of William Severino, Sr. or an intentional, and wanton violation of these rights; that Eileen Severino suffered emotional distress after August 27, 1987 that was severe or extreme and that the damages she suffered was $10,000.00; that the conduct after August 27, 1987 was a reckless indifference to the rights of the plaintiffs or an intentional and wanton violation of those rights.
The predicate for the third count is found in paragraph 6 that alleges that defendant's (agents, etc.) conduct was outrageous and shocking and constituted intentional activity designed to inflict emotional injury and distress upon plaintiffs. CT Page 5149-KKK
 "The tort of intentional infliction of emotional distress has been recognized and Murray v. Bridgeport Hospital, 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984), provides appropriate guidelines for determining whether a successful cause of action will lie. "In order for the plaintiff to prevail in a case of liability under . . . [the intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."
Petyan v. Ellis, 200 Conn. 243, 253 (1986).
This Verdict and the answers to interrogatories returned were tailored to present the above elements for determination by the jury. The jury observed the plaintiffs under direct and cross examination and was able properly to determine issues of motive, intent and subjective feelings and reactions, as well as inferences form the evidential underpinnings from all the evidence presented. The jury's duty was to consider the totality of all the evidence and to follow the "appropriate guidelines" set forth above.
Counterclaim
The jury returned a Verdict Form addressing the Counterclaim
by answering interrogatories finding that plaintiffs failed to pay the basic rent (as adjusted) as set forth in William Ryan's letter of July 26, 1989 on or before November 22, 1989 — the date the notices to quit were served: that the amount of back rent due for the period ending July 1989 was $896.34; that the amount due for the months of August through November was $2,827.02; the amount paid for that period was $1,525.32; that the plaintiffs owed use and occupancy charges for (the) period after December 6, 1989; that the amount of use and occupancy to be paid for the period from December 6, 1989 to June 30, 1990 is st at $482.67 per month; and that the amount to be credited against use and occupancy charge is $2,896.02.
The predicate for this verdict form and the interrogatories returned by the jury is found in the pleadings filed by the CT Page 5149-LLL defendant covering "First Counterclaim" and "Second Counterclaim".
The Verdict Form and interrogatories on the counterclaim were tailored to the claims and relief sought by the defendant. The answers returned by the jury were based on evidential underpinnings in the evidence. The parties are bound by the pleadings. The court has a duty to submit to the jury issues upon which the evidence would reasonably support a finding. It must be noted that the jury returned form verdicts and answered interrogatories on all issues outlined by the pleadings and reasonably supported by the evidence. There is no indication that the jury was confused or mislead. The jury easily distinguished all issues outlined by all the pleadings and reasonably supported by the evidence from the defendant's theory that the jury returned factual findings contrary to another finding on the sameissue. The verdict forms and interrogatories returned, the pleadings and the jury's responses are reasonably supported by the evidence and easily reconciled as to independent issues. The test is whether there is sufficient evidence to support the verdict on the claim (issue) on which liability is found. Lesleyv. T.G. Y. Stores Inc., 749 F. ed 2nd, [749 F.2d], 1423-1434 (1988).
The jury was presented with substantial factual testimonial and material evidence that plaintiffs were not afforded fair and reasonable treatment and a fair and reasonable opportunity properly to negotiate questions on hours of operation, vending machines, storage, security, control of the waiting room area, competition, location issues, lack of good faith concerning issues of harassment and other misconduct. The jury reasonably could conclude that defendant's consideration of plaintiff's operational problems were casual and perfunctory and deprived the plaintiffs' of their property without due process of law and in addition deprived the plaintiffs of substantive due process of law in violation of 42 U.S.C. § 1983 and 1988.
There was substantial factual evidence to support all conclusions reached. These conclusions are reasonably supported by the record.
The defendant's Motion to Set Aside Verdicts and For New Trial is denied (128).
The defendant's Motion for Judgment Notwithstanding the Verdicts is denied (127). CT Page 5149-MMM
John N. Reynolds, State Trial Referee