MYLES E. COVEY ET AL. *v.* DONALD W. WILLSON ET AL.
(2885)

DUPONT, C.P.J., SPALLONE and L. DORSEY, Js.

Argued March 29—decision released June 11, 1985

*Walter A. Twachtman, Jr.,* for the appellants (plaintiffs).

*Homer G. Scoville,* for the appellants (defendants).

L. DORSEY, J. This appeal arose from an action for equitable relief and to recover for damage allegedly caused by the defendants' breach of a contract for the sale and purchase of a business interest, and an agreement not to compete. The trial referee rendered judgment for the defendants as to the alleged breach of the covenant not to compete and for the plaintiffs as to the breach of the agreement not to solicit business, also contained in the covenant, but awarded only nominal damages to the plaintiffs as a result of that breach. The plaintiffs appeal the court's decision as to both aspects of the judgment.

The plaintiffs, Myles E. Covey and Norma S. Covey, owned one half of the interest in a business known as C & W Manufacturing Company, Inc. (C & W).[1] The defendants, Donald W. Willson and Eleanor M. Willson owned the other one half interest. C & W specialized in the manufacture and sale of precision parts and components for the aircraft, missile, electronic, medical and gyro industries involving, basically, metal fabricating processes where stock metals were machined in finished or partially finished products.

---

[1] C & W was added as a party plaintiff before trial.

Some disagreement between the parties having arisen, in April, 1979, the plaintiffs agreed to buy and the defendants agreed to sell their interest in certain real estate and the one half interest in C & W. In consideration, the plaintiffs paid to the defendants $300,000, agreed to hold them harmless from liability on two mortgages aggregating $269,000 and assigned certain life insurance policies, including the cash surrender value of the policies.

Ancillary to the sale of the business and after extensive negotiations, the plaintiffs and the defendants entered into a "Covenant Not to Compete" which was incorporated into the contract of sale.[2] By the terms of this covenant, the Coveys agreed to pay to the Willsons $180,000, payable $600 per week for a term of six years, in consideration for the Willsons' agreement not to compete with C & W. In addition to the covenant not to compete and for no stated additional consideration, the Willsons agreed not to solicit any business from any account, customer or client included in a list of about fifty businesses.

---

[2] The pertinent portions of the covenant not to compete and the agreement not to solicit provide: "5. *COVENANT NOT TO COMPETE.* For a period of six (6) years from the date of closing, the SELLER shall not directly or indirectly enter into a competitive business either as a sole proprietor, stockholder, partner or as an agent, servant or employee of a business which is engaged in the same or similar manufacturing business as the CORPORATION within the States of New York, New Jersey, Pennsylvania and all of the New England States. In consideration for the covenant not to compete the SELLER, Donald W. Willson, shall be paid THIRTY THOUSAND ($30,000.00) DOLLARS per year for six (6) years on a weekly basis. In addition to the covenant not to compete, the SELLER hereby argees not to solicit any business whether as a sole proprietor, stockholder, partner, or as an agent, servant or employee of a business which is engaged in the same or similar manufacturing business as the CORPORATION from any account, customer or client previously serviced by the CORPORATION as shown on the customer list set out in Schedule C within the States of New York, New Jersey, Pennsylvania and all of the New England States.

The critical issues in the case arise out of the defendants' subsequent acquisition and operation of part of a business formerly operated by Merit Tool and Die Company (Merit). Merit was founded in 1929 by William Geigl as a machine shop. The J.M. Ney Company (Ney) since 1888 has been marketing a device known as "The Ney Surveyor" a proprietary product which is used by the dental profession in the construction of dental bridgework. Beginning in the early 1940's, the "Surveyor" was modified and improved by the joint efforts of Geigl and of Ney's employees, and Giegl, doing business as Merit, was the sole supplier of the "Surveyor" parts, the dies for casting the aluminum parts and the special tooling necessary for its production. In early 1980, Geigl decided to retire and offered to sell his entire business to Donald Willson, a long time friend. Willson declined to purchase the entire business but did buy the tooling, drawings and dies for the manufacture of the "Surveyor." Some of the tooling referred to is over 100 years old and is usable only for the special purpose of producing the "Surveyor." Geigl sold the rest of his machinery and tools to others. Willson changed the name of the enterprise to Willson Manufacturing of Connecticut, Inc., and has continued to manufacture one product only, "The Ney Surveyor," which it supplies to one company only, the J.M. Ney Company. The plaintiffs claim that the operation of Willson Manufacturing of Connecticut, Inc., violates the provision of the "Covenant Not to Compete," thereby entitling them to equitable relief and damages. The trial court made certain findings and conclusions from which the plaintiffs appeal. The trial court found specificially "that the defendants, in manufacturing 'The Ney Surveyor' are not engaged in business which is 'competitive' with that of C & W."

The plaintiffs claim the trial court erred in its interpretation of the term "competitive business" as that

term is employed in paragraph five of the purchase agreement. It is their claim that a "competitive business" is any business which is competitive. The use of that term in paragraph five is not restricted, they contend, to being competitive with the plaintiffs or with C & W. In other words, it is the plaintiffs' contention that by following legal principles relating to contract language construction, the words "competitive business" mean that the defendants could be in breach of their agreement if they serve in certain enumerated capacities in "a business which is engaged in the same or similar manufacturing business as C & W." See *Leonard Concrete Pipe Co.* v. *C.W. Blakeslee & Sons, Inc.,* 178 Conn. 594, 598–99, 424 A.2d 277 (1979); *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 407, 365 A.2d 1086 (1976); *Cocco* v. *Cocco,* 166 Conn. 37, 41, 347 A.2d 72 (1974); *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 515, 123 A.2d 755 (1956); *Thompson Optical Institute* v. *Thompson,* 119 Or. 252, 259, 237 P. 965 (1925); 54 Am. Jur. 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 571; see also 1 A.L.R.3d 782. The trial court directly addressed this issue in its memorandum of decision. In support of its finding that the defendants in manufacturing "The Ney Surveyor" are not engaged in business which is "competitive" with that of C & W, the court said: "The plaintiff Covey testified that in his opinion, the Willsons were in a competitive business 'because metal is being fabricated' although he knows of no other violation of the covenant not to compete, has 'never considered making "The Ney Surveyor" ' or talked to the Ney Company or sought its business. Significantly, he testified that he knows of no loss his company sustained from any competition by the defendants and doesn't think he has lost anything as a result of the defendants being in business."

The trial court correctly interpreted the significant terms of the agreement. That court concluded that, while the potential for competition between the two companies exists, the plaintiffs failed to prove that such competition has existed or presently exists and that the plaintiffs failed to prove the defendants breached their covenant not to compete. Competition involves more than conducting a similar business or utilizing a similar process of manufacturing. As the Connecticut Supreme Court noted in *Anthony Augliera, Inc.* v. *Loughlin,* 149 Conn. 478, 485, 181 A.2d 596 (1962), "[c]ompetition has been defined as 'the effort of two or more parties to secure the custom of a third party by the offer of the most favorable terms.' Webster's Third New International Dictionary; see *Russellville Canning Co.* v. *American Can Co.,* 87 F. Sup. 484, 499 (W.D. Ark.)"

A second issue here involved arises out of the plaintiffs' claim that the defendants breached their agreement not to solicit any business "from any account, customer, or client previously served by the CORPORATION" (C & W) as shown on a certain schedule or list. The J.M. Ney Co. is included in that list of about fifty names. The trial court found that Willson, as an officer and director first of the Merit Company and, after the change of name, of Willson Manufacturing Company, Inc., did solicit from the Ney Company the business of manufacturing "The Ney Surveyor." It concluded, however, that although the plaintiffs did prove that the defendants, by soliciting for the Ney business, have breached their agreement not to solicit business from a company listed on the proscribed list, they did not prove that they thereby sustained any actual damages and, therefore, were entitled to recover only nominal damages. The trial court, in its memorandum of decision commented on the evidence as follows: "The plaintiff Covey never considered making "The Ney Sur-

veyor," never sought the business from Ney and doesn't think that the plaintiffs have lost anything as a result of the defendants being in business."

We reject the plaintiff's claim that the trial court should have viewed paragraph five as containing two interdependent restrictive covenants, collectively expressing the parties' intent and that a violation of either would constitute a complete breach of the whole of paragraph five. The trial court analyzed the language of the paragraph and compared the words of the covenant not to compete with the words which formed the agreement not to solicit as therein contained.

In the light of the court's finding of a breach of the agreement not to solicit, and its finding that no actual damages were proved, the court correctly concluded that the plaintiffs should recover nominal damages for the technical legal injury. *Riccio* v. *Abate,* 176 Conn. 415, 418–19, 407 A.2d 1005 (1979); *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 409, 365 A.2d 1086 (1976); *Dimmock* v. *New London,* 157 Conn. 9, 16, 245 A.2d 569 (1968).

There is no error.

In this opinion the other judges concurred.