[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action, with a return date of May 19, 1998, was brought to the Superior Court at New London. The complaint against General Motors Corporation presented a claim under the Connecticut Products Liability Act, General Statutes § 52-572m et seq. The complaint alleged that the defendant, General Motors Corporation, had designed a defective rear-wheel assembly, in particular a spindle on the rear wheel of a 1991 Chevrolet Cavalier manufactured by the defendant. In addition to the claim of design defect, the complaint alleged a manufacturing defect with respect to the same parts. The defective product allegedly have caused an automobile accident in which the plaintiff, Eric Pierce, suffered extensive injuries. The other counts are not relevant to this motion.
Following a fairly lengthy trial, a verdict was returned by the jury. The verdict was in the form of answers to a set of jury interrogatories which found in favor of the defendant on the defective design claim. The jury found in favor of the plaintiff on the defective manufacturing CT Page 16957 claim. With respect to the question of damages, the jury found economic damages in the amount of $103,120.63. They found zero noneconomic damages, and they found that the plaintiff's own conduct was not a proximate cause in bringing about his own injuries.
Following the verdict, the plaintiff filed a motion for additur pursuant to Practice Book § 16-35 or, in the alternative, for a new trial pursuant to General Statutes § 52-228b. The defendant has also filed a motion for a new trial. The parties have submitted briefs in support of their motions and have presented oral argument.
FACTS:
The facts presented for the jury's consideration and relevant to the decision on these motions are as follows: On or about May 24, 1996, the plaintiff received a phone call from a friend named Brian Shinkovich. Shinkovich was the owner of a 1991 Chevrolet Cavalier, the vehicle that is the subject of the plaintiff's claims. Shinkovich invited the plaintiff for a night of drinking and playing pool at a local bar. Shinkovich had also arranged for Angela Gosselin, a mutual friend of the plaintiff and himself, to accompany them and serve as their designated driver. Gosselin had no valid operator's license, and has never had one. She had limited experience in driving and had never passed a test or exam or received any formal training by way of driver's education. Shinkovich and the plaintiff consumed a substantial amount of alcohol and then entered the car driven by Gosselin. On May 25, 1996. at approximately 2:00 a.m., their route home took them onto Interstate 395 at or near Waterford, Connecticut, north of its intersection with Interstate 95. At the time of the accident, Gosselin was driving the vehicle and Shinkovich was the front seat passenger. The plaintiff was the lone rear seat passenger. The testimony of the occupants of the vehicle was that while the vehicle was in the left travel lane of the highway, it experienced an unusual movement. The plaintiff alleges the left rear wheel broke off at that time. As a result, Gosselin lost control of the vehicle, which traveled from the left lane, across the right lane and the shoulder, and into a rollover type crash off the road. In the course of the crash, the plaintiff was ejected from the vehicle. He was found partially under the vehicle with substantial injuries including broken ribs, a broken clavicle, a broken scapula, injuries to his lungs and heart, and head trauma. The plaintiff was subsequently taken from the scene of the accident to a hospital where he underwent a significant hospital stay and treatment. His hospital and medical bills total $93,120.63. The plaintiff, who claims to be employed as a carpenter, also made a claim for lost wages. (The jury verdict is $103,120.63 in economic damages.)
Further relevant facts are that approximately two years later, in CT Page 16958 August, 1998, the plaintiff was involved in another accident where he was a passenger in a vehicle operated by his brother. That vehicle also rolled over and the plaintiff was again ejected. In a lawsuit arising from the second accident, the plaintiff claimed some injuries which were similar in nature to injuries he sustained in the first accident. There was no significant medical history presented that had affected the plaintiff prior to the date of the first accident.
At trial, each of the parties presented expert witnesses with respect to the issue of liability. The plaintiff's experts testified both as to the alleged design defect and the manufacturing defect as well as a reconstruction of the accident. The defendant presented experts on those same issues. All of the claims made with respect to the products themselves and as to liability were vigorously contested. With respect to the issue of damages, the plaintiff supplemented his own testimony by that of his sister, medical records and a medical doctor. While the defendant presented no medical expert with respect to the plaintiff's injuries, there was extensive and thorough cross-examination of the plaintiff's doctor and of the plaintiff himself. The cross-examination of the plaintiff's doctor included the fact that the plaintiff had failed to disclose the second accident to his own doctor prior to his being issued a permanency rating. The plaintiff was cross-examined with respect to the issue of his claims of similar injuries in the subsequent accident. There was also cross-examination with respect to the plaintiff's claim of future earning loss and his ability to continue in his same occupation as a result of his present injuries and their effect upon his health.
The jury deliberated for nearly two full days. On the first day, the court received three questions from the jury, which were shared with counsel and answered. All three inquiries were with respect to issues of liability. At the end of the first day (4:45 pm) there was a note indicating that the jury could not reach a unanimous decision. In response to that note, and after conferring with counsel, the court gave the jury what is commonly known as a "Chip Smith" charge. See State v.Smith, 49 Conn. 376 (1881). The jury was dismissed for the evening with the customary instructions and asked to return the next morning. The next morning, before deliberations were to resume, the court repeated the same instruction. The jury deliberated the entire next day with only one question which came late in the day. That question also was with respect to the issue of liability. A portion of the testimony of one of the defendant's liability experts was played in response to the question and shortly thereafter the jury returned with the verdict as stated above.
MOTION FOR ADDITUR.
Any consideration for a motion for additur must begin from the CT Page 16959 recognition that "[l]itigants have a constitutional right to have factual issues resolved by the jury. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Internal quotation marks omitted.) Gaudio v. Griffin HealthServices Corp., 249 Conn. 523, 550-551, 733 A.2d 197 (1999); Childs v.Bainer, 235 Conn. 107, 112, 663 A.2d 398 (1995).
"The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." Birgelv. Heintz, 163 Conn. 23, 28, 301 A.2d 249 (1972); see also General Statutes § 52-216a.
Until recently, the well-established rule was that a verdict which awarded economic damages without non-economic damages was inadequate as a matter of law. See Johnson v. Franklin, 112 Conn. 228, 152 A. 64 (1930). Our Supreme Court visited that rule in the matter of Childs v. Bainer,
supra, 235 Conn. 107, and finally, in its decision in Wichers v. Hatch,252 Conn. 174, 745 A.2d 789 (2000), eliminated that rule. In place, our Supreme Court in Wichers articulated a standard which requires analysis on a case by case basis.
In this case, the plaintiff argues that since the jury awarded economic damages in the total amount claimed, the verdict shows a finding that resolves the issues of causation with respect to the injuries. In addition, the plaintiff argues that the verdict is inadequate and unjust if fall of the medical expenses are awarded but pain and suffering is not.
"The Supreme Court measured the discretion of a trial court in ruling on a motion for additur, considering whether 1) the jury award shocks the conscience; 2) the plaintiff who has proved substantial injuries is awarded inadequate damages; and 3) whether or not the verdict is inherently ambiguous." Nesto v. Vinci, Superior Court, judicial district of New Haven at Meriden, Docket No. 258075 (January 27, 1999, Dorsey, J.T.R.) (5 Conn. Ops. 273, 275), citing Childs v. Bainer, supra,235 Conn. 114-115.
The court in this case finds the award of zero noneconomic damages to be manifestly inadequate to the extent that it shocks the sense of justice of the court. In support of its finding, the court notes that CT Page 16960 there is essentially no dispute as to the causation of the injuries complained of by the plaintiff as being from this accident. To reiterate, the plaintiff suffered injuries to his ribs, collarbone, lung, heart, knees, hips, head and shoulders immediately following this accident. He was hospitalized for approximately three weeks. He underwent surgical procedures. He was on a morphine drip and had a tracheotomy. He was unconscious for a significant period of time. There was no claim that the plaintiff's treatment and bills were either excessive or unnecessary. While the injuries suffered in a subsequent accident some two years later may have been similar in part, there is no question that these injuries, caused by the first accident, were indeed substantial by any definition of that word. Also, there is no question that these injuries caused physical pain and suffering to the plaintiff. The jury's verdict not allowing recovery of noneconomic damages for injuries of this nature is illogical, unreasonable, and does shock the sense of justice. The verdict compels the conclusion that the jury was "influenced by partiality, prejudice, mistake or corruption." Birgel v. Heintz, supra, 28.
Based on the foregoing, the plaintiff's motion for additur is granted, and the court orders an additur in the amount of $75,000.00 in noneconomic damages.
MOTION FOR NEW TRIAL:
Having granted the plaintiff's motion for additur, the court must decide whether, in the event that the defendant refuses the additur, a new trial should be held on the issue of damages or as to both damages and liability.
The defendant urges that the decision of the jury is in effect a "compromise verdict," that is, a verdict "where some of the jurors . . . conceded liability against their judgment, and some . . . reduced their estimate of the damages in order to secure an agreement of liability with their fellow jurors." Murray v. Krenz, 94 Conn. 503, 508-509, 109 A. 859
(1920).
In reviewing cases where a new trial has been ordered, the possibility that a compromise verdict has been reached frequently arises. In the cases of Fazio v. Brown, 209 Conn. 450, 551 A.2d 1227 (1988), and more recently in George v. Ericson, 250 Conn. 312, 736 A.2d 889 (1999), those issues have been analyzed in detail.
"Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case. Where the error as to one issue . . . is separable from the general issues, the new trial may be limited to the CT Page 16961 error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole. . . . But where the retrial of the single issue may affect the other issues to the prejudice of either party, the court will not exercise its discretion in limiting the new trial but will grant it de novo. . . . We have applied this principle in ordering retrials on both liability and damages when there was reason to believe that a verdict, so low in relation to the injuries sustained in a negligence case that reversal is warranted, may have resulted from a compromise reached by the jurors on the issue of liability." (Citation omitted.) George v. Ericson, supra, 250 Conn. 332.
The Supreme Court has further observed: "`[T]he jury's intent in finding the issues for the plaintiff, but awarding zero damages, is known only to the jurors, and this court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation.' Malmberg v. Lopez, [208 Conn. 675, 683, 546 A.2d 264
(1988)]. `A plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. See, e.g., Riccio v. Abate,
[176 Conn. 415, 418-19, 407 A.2d 1005 (1979)]; Covey v. Willson,4 Conn. App. 233, 239, 493 A.2d 290 (1985). The jury's intent in rendering a plaintiff's verdict with zero [noneconomic] damages . . . is far less clear.' Malmberg v. Lopez, supra, 681-82." Jeffries v. Johnson,27 Conn. App. 471, 477, 607 A.2d 443 (1992).
It is not unprecedented to have the issues of damages and liability returned pursuant to a motion for additur, even when those issues have been partially resolved in the initial trial. For instance, in the matter of Jaworski v. Kiernan, Superior Court, judicial district of New Britain, Docket No. 464969 (August 1, 1996, Arena, J.)
(17 Conn.L.Rptr. 215), rev'd in part on other grounds, 241 Conn. 399, 696 A.2d 332
(1997), the jury had found full economic damages, and further found that the plaintiff was not comparatively negligent. As in this case, there was an award of zero noneconomic damages. In Jaworski, the trial court stated that "since it would be speculative for this court to determine the jury's reason for the zero noneconomic award, this court concludes the jury either disregarded the court's instructions, misapplied them, or the verdict was the result of a compromise." Id., 218. The court then ordered a new trial on both issues in the event of the rejection of an additur.
The court finds under the circumstances presented here that a retrial limited to the issue of damages would result in an injustice to the defendant. Accordingly, should the additur not be accepted as specified, a new trial is granted as to both liability and damages.
ORDER: CT Page 16962
It is ordered that the verdict be set aside unless within three weeks of the filing of this decision the defendant shall file with the clerk an additur in the amount of $75,000.00. Thereafter, the plaintiff shall have one week from the filing of the additur by the defendant to accept the additur by filing an acceptance with the clerk. If the additur is not filed within set time period, or filed and not accepted by the plaintiff, the verdict is hereby set aside and a new trial is ordered on the claim as to both liability and damages.
Robaina, J.